**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| LIMELIGHT NETWORKS, INC., ) | |
| ) | |
| Plaintiff and Counterclaim ) | |
| Defendant, ) | Case No. 3:15-cv-720-JAG |
| v. ) | |
| ) | |
| XO COMMUNICATIONS, LLC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant, ) | |
| ) | |
| AKAMAI TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant and Counterclaim ) | |
| Plaintiff, ) | |
| ) | |
| MASSACHUSETTS INSTITUTE OF ) | |
| TECHNOLOGY, ) | |
| ) | |
| Counterclaim Plaintiff. ) | |

**DEFENDANT AKAMAI TECHNOLOGIES INC.'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO THE
FIRST AMENDED COMPLAINT OF PLAINTIFF LIMELIGHT NETWORKS, INC.**

Defendant Akamai Technologies, Inc. ("Akamai") hereby answers the First Amended

Complaint filed by Plaintiff Limelight Networks, Inc. ("Limelight") as follows:

**NATURE OF THE ACTION**

1.     Akamai admits that the First Amended Complaint purports to state a cause of

action for patent infringement.  Akamai expressly denies that it has infringed or is infringing any

valid claim of the patents asserted in the First Amended Complaint, and that Limelight is entitled

to any relief whatsoever.

2.      Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the First Amended Complaint and, therefore, denies those allegations.

3.      Akamai admits that the First Amended Complaint purports to seek monetary damages, prejudgment interest and injunctive relief.  Akamai expressly denies that it has infringed or is infringing any valid claim of the patents asserted in the First Amended Complaint, and that Limelight is entitled to any relief whatsoever.

## THE PARTIES

4.      Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the First Amended Complaint and, therefore, denies those allegations.

5.      Admitted.

6.      Admitted.

7.      Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the First Amended Complaint and, therefore, denies those allegations.

8.      Akamai admits that it sells products and services for digital content delivery and that to some extent it competes with Limelight and others in the Content Delivery Network ("CDN") space.  Akamai denies that it is has or is currently engaged in an extensive partnership with XO and denies that XO is currently a reseller of Akamai services or an Akamai partner with respect to the deployment and operations of hardware and software components of Akamai's CDN.  Akamai is without information or knowledge sufficient to form a belief as to the truth of

the remaining allegations in Paragraph 8 of the First Amended Complaint and, therefore, denies those allegations.

9.      Akamai admits that it was the first to market with a commercially feasible CDN solution and that other companies have since entered the market.  Akamai denies the remaining allegations in Paragraph 9 of the First Amended Complaint.

## JURISDICTION AND VENUE

10.      Akamai admits that the First Amended Complaint purports to state a cause of action for patent infringement.  Akamai expressly denies that it has infringed or is infringing any valid claim of the patents asserted in the First Amended Complaint, and that Limelight is entitled to any relief whatsoever.

11.      Paragraph 11 states a legal conclusion to which no response is required.  To the extent a response is required, Akamai admits this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.      Paragraph 12 states a legal conclusion to which no response is required.  To the extent a response is required, Akamai denies that it shares any customer with XO, and further denies that any Akamai system infringes any valid claims of the asserted patents.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 of the First Amended Complaint and, therefore, denies those allegations.

13.      Akamai denies that it has infringed or is infringing any valid claim of the patents asserted in the First Amended Complaint.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 of the First Amended Complaint and, therefore, denies those allegations.

14.     Paragraph 14 states a legal conclusion to which no response is required.  To the extent a response is required, Akamai admits this Court has personal jurisdiction over Akamai. Akamai further admits that it conducts business in Virginia and in this District and has an office at 11111 Sunset Hills Road, Suite 250, Reston, VA 20190.  Akamai further admits that some of the content servers in its content delivery network are located in Virginia and in this District and that specifically it has servers located at 12100 Sunrise Valley Drive, Reston, VA 20191, 1780 Business Center Drive, Reston, VA 20190, and in Sterling, VA, Manassas, VA, Ashburn, VA, and Vienna, VA.  Akamai denies that any Akamai servers located in XO's data centers, including Akamai's servers located at 12100 Sunrise Valley Drive, Reston, VA 20191.  Akamai denies the remaining allegations in Paragraph 14 of the First Amended Complaint.

15.     Denied.

16.     Paragraph 16 states a legal conclusion to which no response is required.  To the extent a response is required, Akamai denies that a substantial part of the events giving rise to Limelight's claims occurred in this district.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 of the First Amended Complaint and, therefore, denies those allegations.

17.     Paragraph 17 of the First Amended Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Akamai admits that venue is proper for Akamai in this District under 28 U.S.C. §§ 1391(b) and (c), and 1400(b), but denies that this District is a convenient forum for the parties and potential witnesses.  Akamai admits that it entered into an agreement with XO in 2001.  Akamai denies that that agreement is still in effect or has been in effect since prior to May of 2010, the earliest issue date of any of the patents asserted by Limelight in this action. Akamai states that the agreement and press releases about

the agreement speak for themselves, and Akamai denies the allegations in Paragraph 17 to the extent they do not accurately describe those documents.  Akamai expressly denies that it has infringed or is infringing any valid claim of the patents asserted in the First Amended Complaint, and that Limelight is entitled to any relief whatsoever.  Akamai denies the remaining allegations in Paragraph 17 of the First Amended Complaint.

18.    Akamai admits that it has entered into agreements with XO wherein XO provides "peering and transit services" to Akamai servers.  These agreements speak for themselves, and Akamai denies the allegations in Paragraph 18 to the extent they do not accurately describe those documents.  Akamai denies the remaining allegations in Paragraph 18 of the First Amended Complaint.

## JOINDER

19.    Paragraph 19 of the First Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, Akamai expressly denies that it has infringed or is infringing any valid claim of the patents asserted in the First Amended Complaint, and that Limelight is entitled to any relief whatsoever.  Akamai further denies that factual issues regarding the operation of accused hardware and software in this case are common to Akamai and XO and denies that joinder is proper under 35 U.S.C. § 299.

20.    Paragraph 20 of the First Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, Akamai denies the allegations in Paragraph 20.

## THE ASSERTED PATENTS

21.     Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the First Amended Complaint and, therefore, denies those allegations.

## THE CONDITIONAL PROTOCOL CONTROL PATENTS

22.     Akamai admits that a document purporting to be a copy of U.S. Patent No. 7,715,324 ("the '324 Patent") entitled "Conditional Protocol Control," and stating on its face that it issued on May 11, 2010, is attached to the First Amended Complaint as Exhibit A.  Akamai denies that the '324 Patent was duly and legally issued.

23.     Akamai admits that a document purporting to be a copy of U.S. Patent No. 8,750,155 ("the '155 Patent"), entitled "Conditional Protocol Control," is attached to the First Amended Complaint as Exhibit B.  Akamai denies the remaining allegations in Paragraph 23.

24.     Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the First Amended Complaint, and, therefore, denies those allegations.

25.     Akamai admits that Limelight licensed software from FastSoft, Inc., a company that developed FastTCP.  Akamai denies that FastSoft had no experience in content acceleration in the context of CDNs, and further denies that the technology supplied by FastSoft to Limelight was elementary.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 of the First Amended Complaint, and, therefore, denies those allegations.

26.     Akamai admits that Limelight Networks, Inc. is listed on the face of Exhibit A as the purported assignee of the '324 Patent, and on the face of Exhibit B as the purported assignee

of the '155 Patent.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26 of the First Amended Complaint, and, therefore, denies those allegations.

27.     Denied.

28.     Akamai admits that it announced that it had acquired FastSoft in September 2012 and admits that certain members of FastSoft's engineering team were hired by Akamai.  Akamai further admits that shortly after acquiring FastSoft, Akamai communicated to Limelight that FastSoft products were entering their End of Life ("EOL") phase, and support for those products would be discontinued within one year, or earlier if allowed under the license agreement. Akamai denies that FastSoft's engineering team had been exposed to Limelight's innovations.

29.     Denied.

## OTHER LIMELIGHT PATENTS

30.     Akamai admits that a document purporting to be a copy of U.S. Patent No. 8,856,263 ("the '263 Patent") entitled "Systems and methods thereto for acceleration of web page access using next page optimization, caching and pre-fetching techniques," and stating on its face that it issued on October 7, 2014, is attached to the First Amended Complaint as Exhibit C. Akamai denies that the '263 Patent was duly and legally issued.

31.     Akamai admits that a document purporting to be a copy of U.S. Patent No. 8,683,002 ("the '002 Patent") entitled "Content delivery network cache grouping," and stating on its face that it issued on March 25, 2014, is attached to the First Amended Complaint as Exhibit D.  Akamai denies that the '002 Patent was duly and legally issued.

32.     Akamai admits that a document purporting to be a copy of U.S. Patent No. 9,015,348 ("the '348 Patent") entitled "Dynamically selecting between acceleration techniques

based on content request attributes," and stating on its face that it issued on April 21, 2015, is attached to the First Amended Complaint as Exhibit E.  Akamai denies that the '348 Patent was duly and legally issued.

33.     Akamai admits that a document purporting to be a copy of U.S. Patent No. 8,615,577 ("the '577 Patent") entitled "Policy based processing of content objects in a content delivery network using mutators," and stating on its face that it issued on December 24, 2013, is attached to the First Amended Complaint as Exhibit F.  Akamai denies that the '577 Patent was duly and legally issued.

34.     Akamai admits that Limelight Networks, Inc. is listed on the face of Exhibits A through F as the purported assignee of the '324, '155, '002, '263, '348 and '577 Patents.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34 of the First Amended Complaint, and, therefore, denies those allegations.

35.     Akamai admits that it was served with Limelight's original Complaint on December 2, 2015.  Akamai further admits that a document purporting to be a copy of the executed summons and proofs of service for Akamai is attached to the First Amended Complaint as Exhibit H.

36.     Akamai admits that Akamai received notice of each of the Asserted Patents on December 2, 2015, the date of service of Limelight's original Complaint.  The remainder of Paragraph 36 of the First Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, Akamai expressly denies that it has infringed or is infringing any valid claim of the patents asserted in the First Amended Complaint, and that Limelight is entitled to any relief whatsoever.

37.     Akamai further admits that a document purporting to be a copy of the executed summons and proofs of service for XO is attached to the First Amended Complaint as Exhibit I and that Docket No. 12 in this case reflects that XO was served with Limelight's original Complaint on December 12, 2015.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 37 of the First Amended Complaint, and, therefore, denies those allegations.

38.     Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the First Amended Complaint.  Further, Paragraph 38 of the First Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, Akamai expressly denies that it has infringed or is infringing any valid claim of the patents asserted in the First Amended Complaint, and that Limelight is entitled to any relief whatsoever.

## COUNT I AGAINST AKAMAI:
## INFRINGEMENT OF U.S. PATENT NO. 8,750,155

39.     Akamai incorporates and reiterates the prior responses as if fully set forth herein.

40.     Denied.

41.     Denied.

42.     Akamai denies that its edge servers meet the requirements of the claimed content distribution server.  Akamai denies that Akamai publishes the documents referred to in Paragraph 42 and that those documents are publicly available.  Akamai further states that those documents speak for themselves and denies the allegations in Paragraph 42 to the extent they do not accurately describe those documents.  Akamai admits that the images depicted in Paragraph 42 are contained in those documents and admits that its edge servers have multiple network ports to send and receive data.  Akamai denies the remaining allegations in Paragraph 42.

43.     Akamai denies that the document referred to in Paragraph 43 is publicly available. Akamai further states that that document speaks for itself and denies the allegations in Paragraph 43 to the extent they do not accurately describe that document.  Akamai denies the remaining allegations in Paragraph 43.

44.     Akamai denies that the document referred to in Paragraph 44 is publicly available. Akamai further states that that document speaks for itself and denies the allegations in Paragraph 44 to the extent they do not accurately describe that document.  Akamai admits that the image depicted in Paragraph 44 is contained in that document.  Akamai denies the remaining allegations in Paragraph 44.

45.     Akamai states that that document referred to in Paragraph 45 speaks for itself and admits that the language quoted in Paragraph 45 is contained in that document.  Akamai denies the remaining allegations in Paragraph 45.

46.     Denied.

47.     Akamai states that that document referred to in Paragraph 47 speaks for itself and admits that the language quoted in Paragraph 47 is contained in that document.  Akamai denies the remaining allegations in Paragraph 47.

48.     Denied.

49.     Denied.

50.     Akamai states that that document referred to in Paragraph 50 speaks for itself and admits that the language quoted in Paragraph 50 is contained in that document.  Akamai denies the remaining allegations in Paragraph 50.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

### COUNT II AGAINST AKAMAI
### INFRINGEMENT OF U.S. PATENT NO. 7,715,324

56.     Akamai incorporates and reiterates the prior responses as if fully set forth herein.

57.     Denied.

58.     Denied

59.     Denied.

60.     Denied.

61.     Akamai denies that Akamai publishes the documents referred to in Paragraph 61 and that those documents are publicly available.  Akamai further states that those documents speak for themselves and denies the allegations in Paragraph 61 to the extent they do not accurately describe those documents.  Akamai admits that the images depicted in Paragraph 61 are contained in those documents and admits that its edge servers include network ports to receive and send communications over a network.  Akamai denies the remaining allegations in Paragraph 61.

62.     Akamai denies that the document referred to in Paragraph 62 is publicly available.  Akamai further states that that document speaks for itself and denies the allegations in Paragraph 62 to the extent they do not accurately describe that document.  Akamai denies the remaining allegations in Paragraph 62.

63.     Akamai states that that document referred to in Paragraph 63 speaks for itself and admits that the language quoted in Paragraph 63 is contained in that document.  Akamai denies the remaining allegations in Paragraph 63.

64.     Denied.

65.     Denied.

66.     Akamai states that that document referred to in Paragraph 66 speaks for itself and admits that the language quoted in Paragraph 66 is contained in that document.  Akamai denies the remaining allegations in Paragraph 66.

67.     Denied.

68.     Akamai states that that document referred to in Paragraph 68 speaks for itself and admits that the language quoted in Paragraph 68 is contained in that document.  Akamai denies the remaining allegations in Paragraph 68.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

**COUNT III AGAINST AKAMAI:**
**INFRINGEMENT OF U.S. PATENT NO. 8,683,002**

74.     Akamai incorporates and reiterates the prior responses as if fully set forth herein.

75.     Denied.  By way of further Answer, Akamai states that the allegations in the second, third, fourth and fifth sentences of this paragraph contain language from the elements of the asserted claims and Akamai's denial of such allegations is based on the attempt to imply that Akamai's Intelligent Platform falls within the scope of the claims from which such language is taken.

76.     Denied.

77.     Akamai states that that document referred to in Paragraph 77 speaks for itself and admits that the language quoted in Paragraph 77 is contained in that document.  Akamai denies the remaining allegations in Paragraph 77.

78.     Akamai states that that document referred to in Paragraph 78 speaks for itself and admits that the language quoted in Paragraph 78 is contained in that document.  Akamai denies the remaining allegations in Paragraph 78.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

## COUNT IV AGAINST AKAMAI:
## INFRINGEMENT OF U.S. PATENT NO. 8,856,263

88.     Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

89.     Denied.

90.     Denied.

91.     Akamai states that that document referred to in Paragraph 91 speaks for itself and admits that the language quoted in Paragraph 91 is contained in that document.  Akamai denies the remaining allegations in Paragraph 91.

92.     Akamai states that that document referred to in Paragraph 92 speaks for itself and admits that the language quoted in Paragraph 92 is contained in that document.  Akamai denies the remaining allegations in Paragraph 92.

93.     Akamai states that that document referred to in Paragraph 93 speaks for itself and denies the allegations in Paragraph 93 to the extent they do not accurately describe these documents.  Akamai denies the remaining allegations in Paragraph 93.

94.     Akamai denies that Akamai publishes the documents referred to in Paragraph 94 and that those documents are publicly available.  Akamai further states that those documents speak for themselves and denies the allegations in Paragraph 94 to the extent they do not accurately describe those documents.  Akamai admits that the images depicted in Paragraph 94 are contained in those documents and admits that its servers have Ethernet ports.  Akamai denies the remaining allegations in Paragraph 94.

95.     Akamai denies that the document referred to in Paragraph 95 is publicly available.  Akamai further states that that document speaks for itself and denies the allegations in Paragraph 95 to the extent they do not accurately describe that document.  Akamai denies the remaining allegations in Paragraph 95.

96.     Denied. By way of further Answer, Akamai states that the allegations of this paragraph are unintelligible in that they contain references to antecedents that are not in the paragraph, and that the allegations in this paragraph contain language from elements of the asserted claims and Akamai's denial of such allegations is also based on the attempt to imply that the accused Akamai systems fall within the scope of the claims from which such language is taken.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

## COUNT V AGAINST AKAMAI:
## INFRINGEMENT OF U.S. PATENT NO. 9,015,348

102.    Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

103.    Denied.  By way of further Answer, Akamai states that the allegations in the second sentence of this paragraph contain language from the elements of the asserted claims and Akamai's denial of such allegations is based on the attempt to imply that the accused Akamai system falls within the scope of the claims from which such language is taken.

104.    Denied.

105.    Denied.

106.    Akamai states that that document referred to in Paragraph 106 speaks for itself and admits that the language quoted in Paragraph 106 is contained in that document.  Akamai denies the remaining allegations in Paragraph 106.

107.    Akamai states that that document referred to in Paragraph 107 speaks for itself and denies the allegations in Paragraph 107 to the extent they do not accurately describe that document.  Akamai denies the remaining allegations in Paragraph 107.

108.    Akamai states that that document referred to in Paragraph 108 speaks for itself and admits that the language quoted in Paragraph 108 is contained in that document.  Akamai denies the remaining allegations in Paragraph 108.

109.     Akamai states that that document referred to in Paragraph 109 speaks for itself and admits that the language quoted in Paragraph 109 is contained in that document.  Akamai denies the remaining allegations in Paragraph 109.

110.     Akamai states that that document referred to in Paragraph 110 speaks for itself and admits that the language quoted in Paragraph 110 is contained in that document.  Akamai denies the remaining allegations in Paragraph 110.

111.     Akamai states that that document referred to in Paragraph 111 speaks for itself and denies the allegations in Paragraph 111 to the extent they do not accurately describe that document.  Akamai denies the remaining allegations in Paragraph 111.

112.     Akamai admits that it distributes edge servers throughout the United States and globally, and that its edge servers include memory, storage devices, a processor, and interfaces to connect with a network interface and to other edge servers and Akamai hardware and software located elsewhere in its content distribution network.   Akamai denies the remaining allegations in Paragraph 112.

113.     Akamai denies that Akamai publishes the documents referred to in Paragraph 113 and that those documents are publicly available.  Akamai further states that those documents speak for themselves and denies the allegations in Paragraph 113 to the extent they do not accurately describe those documents.  Akamai admits that the images depicted in Paragraph 95 are contained in those documents and admits that its edge servers have multiple network ports to send and receive data.  Akamai denies the remaining allegations in Paragraph 113.

114.     Denied.

115.     Denied.

116.     Denied.

117.    Denied.

118.    Denied.

## COUNT VI AGAINST AKAMAI:
## INFRINGEMENT OF U.S. PATENT NO. 8,615,577

119.    Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

120.    Denied.

121.    Denied.

122.    Akamai states that that document referred to in Paragraph 122 speaks for itself and admits that the image depicted in Paragraph 122 is contained in that document.  Akamai denies the remaining allegations in Paragraph 122.

123.    Denied.

124.    Akamai states that that document referred to in Paragraph 124 speaks for itself and admits that the language quoted and image depicted in Paragraph 124 is contained in that document.  Akamai denies the remaining allegations in Paragraph 124.

125.    Akamai states that that document referred to in Paragraph 125 speaks for itself and admits that the language quoted and image depicted in Paragraph 125 is contained in that document.  Akamai denies the remaining allegations in Paragraph 125.

126.    Akamai states that that document referred to in Paragraph 126 speaks for itself and admits that the language quoted and image depicted in Paragraph 126 is contained in that document.  Akamai denies the remaining allegations in Paragraph 126.

127.    Akamai states that that document referred to in Paragraph 127 speaks for itself and admits that the language quoted in Paragraph 127 is contained in that document.  Akamai denies the remaining allegations in Paragraph 127.

128.    Akamai states that that document referred to in Paragraph 128 speaks for itself and denies the allegations in Paragraph 128 to the extent they do not accurately describe that document.  Akamai denies the remaining allegations in Paragraph 128.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

## COUNT VII AGAINST XO:
## INFRINGEMENT OF U.S. PATENT NO. 8,750,155

134.    Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

135.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '155 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 135 of the First Amended Complaint and, therefore, denies those allegations.

136.    Denied.

137.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '155 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 137 of the First Amended Complaint and, therefore, denies those allegations.

138.     Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '155 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers or that Akamai is an XO customer.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 138 of the First Amended Complaint and, therefore, denies those allegations.

139.     Akamai denies that it makes or uses infringing systems.  Akamai further denies that it makes or uses infringing systems where all of the servers are Akamai servers.  Akamai further denies that Akamai and XO act jointly or in concert to perform infringing acts.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that Akamai's edge servers and the Akamai Intelligent Platform work in combination with XO-operated or hosted edge servers or XO network services to infringe the '155 patent.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 139 of the First Amended Complaint and, therefore, denies those allegations.

140.     Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 140 of the First Amended Complaint and, therefore, denies those allegations.

141.     Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 141 of the First Amended Complaint and, therefore, denies those allegations.

## COUNT VIII AGAINST XO:
## INFRINGEMENT OF U.S. PATENT NO. 7,715,324

142.   Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

143.   Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '324 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 143 of the First Amended Complaint and, therefore, denies those allegations.

144.   Denied.

145.   Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '324 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that Akamai's edge servers and the Akamai Intelligent Platform work in combination with XO-operated or hosted edge servers and network services to infringe the '324 patent.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 145 of the First Amended Complaint and, therefore, denies those allegations.

146.   Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '324 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that Akamai's edge servers and the Akamai Intelligent Platform work in combination with XO-operated or hosted edge servers or the XO network to infringe the '324 patent.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 146 of the First Amended Complaint and, therefore, denies those allegations.

147.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 147 of the First Amended Complaint and, therefore, denies those allegations.

148.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 148 of the First Amended Complaint and, therefore, denies those allegations.

**COUNT IX AGAINST XO:**
**INFRINGEMENT OF U.S. PATENT NO. 8,683,002**

149.    Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

150.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '002 Patent.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 150 of the Complaint and, therefore, denies those allegations.

151.    Denied.

152.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '002 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 127 of the Complaint and, therefore, denies those allegations.

153.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '002 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that XO provides a direct network connection to Akamai.  Akamai is without information or knowledge sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 153 of the First Amended Complaint and, therefore, denies those allegations.

154.     Akamai denies that it makes or uses infringing systems.  Akamai further denies that it makes or uses infringing systems where all of the servers are Akamai servers.  Akamai further denies that Akamai and XO act jointly or in concert to perform infringing acts.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that XO provides a direct network connection to Akamai servers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 154 of the First Amended Complaint and, therefore, denies those allegations.

155.     Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 155 of the First Amended Complaint and, therefore, denies those allegations.

156.     Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 156 of the First Amended Complaint and, therefore, denies those allegations.

**COUNT X AGAINST XO:**
**INFRINGEMENT OF U.S. PATENT NO. 8,856,263**

157.     Akamai incorporates and reiterates the prior responses as if fully set forth herein.

158.     Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '263 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 158 of the First Amended Complaint and, therefore, denies those allegations.

159.     Denied.

160.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '263 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that Akamai's edge servers and the Akamai Intelligent Platform work in combination with XO-operated or hosted edge servers or XO network services.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 160 of the First Amended Complaint and, therefore, denies those allegations.

161.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '263 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that XO provides Akamai with a direct network connection.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 161 of the First Amended Complaint and, therefore, denies those allegations.

162.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 162 of the First Amended Complaint and, therefore, denies those allegations.

163.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 163 of the First Amended Complaint and, therefore, denies those allegations.

## COUNT XI AGAINST XO
## INFRINGEMENT OF U.S. PATENT NO. 9,015,348

164.    Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

165.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '348 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 165 of the First Amended Complaint and, therefore, denies those allegations.

166.    Denied.

167.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '348 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 167 of the First Amended Complaint and, therefore, denies those allegations.

168.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '348 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that XO provides a direct network connection to Akamai.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 168 of the First Amended Complaint and, therefore, denies those allegations.

169.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 169 of the First Amended Complaint and, therefore, denies those allegations.

170.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 170 of the First Amended Complaint and, therefore, denies those allegations.

## COUNT XII AGAINST XO:
## INFRINGEMENT OF U.S. PATENT NO. 8,615,577

171.    Akamai incorporates and reiterates the prior responses as if fully set forth at length herein.

172.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '577 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 172 of the First Amended Complaint and, therefore, denies those allegations.

173.    Denied.

174.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '577 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 174 of the First Amended Complaint and, therefore, denies those allegations.

175.    Akamai denies that its products, including but not limited to the Akamai Intelligent Platform, infringe any valid claim of the '577 Patent.  Akamai denies that any Akamai edge servers are located in XO's data centers and further denies that XO provides a direct network connection to Akamai.  Akamai is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 175 of the First Amended Complaint and, therefore, denies those allegations.

176.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 176 of the First Amended Complaint and, therefore, denies those allegations.

177.    Akamai is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 177 of the First Amended Complaint and, therefore, denies those allegations.

## ANSWER TO PRAYER FOR RELIEF

178.    Akamai denies that Plaintiff is entitled to the judgment and relief Plaintiff requests in the First Amended Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The First Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Without shifting the burden of proof, which remains with Limelight, Akamai's products do not infringe any valid claim of U.S. Patent Nos. 8,750,155, 7,715,324, 8,683,002, 8,856,263, 9,015,348, and 8,615,577.

### Third Affirmative Defense

The claims of U.S. Patent Nos. 8,750,155, 7,715,324, 8,683,002, 8,856,263, 9,015,348, and 8,615,577 are invalid because they fail to satisfy the conditions for patentability stated in Title 35 of the United States Code, including, among other sections, §§101, 102, 103, and 112.

### Fourth Affirmative Defense

Without shifting the burden of proof, which remains with Limelight, Limelight's claim for damages is limited by 35 U.S.C. §§ 286 and 287(a).

### Fifth Affirmative Defense

Without shifting the burden of proof, which remains with Limelight, Limelight's claim for injunctive relief is barred because it has an adequate remedy at law, it is not being, and is not

in danger of being, irreparably harmed, the balance of the hardships is not in its favor, and the public interest is not served by the granting of injunctive relief.

Sixth Affirmative Defense

During the prosecution of U.S. Patent Nos. 8,750,155, 7,715,324, 8,683,002, 8,856,263, 9,015,348, and 8,615,577, Limelight or its patent agent or attorney made amendments, took positions, or made concessions, statements, or representations that estop Limelight from asserting U.S. Patent Nos. 8,750,155, 7,715,324, 8,683,002, 8,856,263, 9,015,348, and 8,615,577 against any product made, used, sold, or offered for sale by Akamai.

Seventh Affirmative Defense

Limelight's claims are barred by the doctrine of laches, as Limelight has unreasonably and inexcusably delayed filing the present suit to the material prejudice of Akamai.

Eighth Affirmative Defense

Limelight's claims against Akamai based on U.S. Patent Nos. 7,715,324 and 8,750,155 are barred because, as alleged, Limelight collaborated with FastSoft; as a consequence, FastSoft employees are co-inventors with respect to those patents under 35 USC Sections 116 and 256, and pursuant to Akamai's acquisition of FastSoft, Akamai is licensed under any patents (or claims thereof) which were invented by employees of FastSoft.

Additional Defenses

Akamai reserves the right to assert additional defenses that may become known to it through discovery, including, but not limited to, inequitable conduct.

## COUNTERCLAIMS

Akamai Technologies, Inc. ("Akamai") and Massachusetts Institute of Technology ("MIT") hereby assert the following Counterclaims against Limelight Networks, Inc. ("Limelight"):

## INTRODUCTION

1.     Akamai and Limelight are no strangers to patent litigation.  Although Limelight's complaint paints Akamai as an infringer and Limelight as the aggrieved party, the reality is just the opposite.  For the last decade, these parties have been involved in on-going patent litigation in the United States District Court for the District of Massachusetts over Limelight's infringement of an Akamai content delivery patent.  In 2008, the jury in that litigation found that Limelight infringed Akamai's foundational patent and awarded $45 million in damages.  That verdict now has been re-affirmed after extensive appellate proceedings that began in in 2009.

2.     Through their decade-long fight over the Akamai patent, Limelight never alleged that Akamai was infringing Limelight's own patents.  It was only after the final appellate ruling in Akamai's favor in that underlying litigation—indeed, a mere 14 days after that ruling—that Limelight filed its complaint in this case.

3.     Since filing the complaint in this District, Limelight's prospects in the Massachusetts litigation have continued to wane.  On April 18, 2016, Limelight's petition for certiorari was denied by the United States Supreme Court.  One week later, on April 25, 2016, the Massachusetts district court denied Limelight's last attempt to undo the jury verdict. Judgment is expected to be entered in that case shortly, and the court has already required Limelight to provide Akamai an irrevocable letter of credit in the amount of approximately sixty-

three million dollars to secure Akamai's damages award for the period of infringement at issue there, namely, 2006-2007.

4.      Based on Limelight's most recent securities reporting, the irrevocable letter credit represents almost 85% of Limelight's cash on hand for operation of its business (excluding borrowed funds).

5.      Viewed through the crucible of the Massachusetts litigation, and especially given Limelight's bleak prospects there, Limelight's timing and motivation for filing this litigation are apparent.  Indeed, Limelight's allegations demonstrate how it is straining to manufacture a case against Akamai in this District.  For example, and based solely on a fifteen year-old press release, Limelight has joined XO Communications by asserting that XO resells Akamai's services and that Akamai provides those services from Akamai's servers located in XO's facilities, this despite Limelight being in possession of documents and sworn testimony unequivocally proving that those assertions are false.

6.      Limelight's first three counts against Akamai ignore that Akamai developed the relevant technologies it is using today as least *as early as 2005*, three years before Limelight claims that it *began* development work on these technologies, and nearly four years before Limelight even filed its first patent application.

7.      Indeed, in December 2005, Akamai sought and later obtained its own patent (U.S. Patent No. 8,447,837) that describes Akamai's technology for protocol optimizations and content pre-fetching that Limelight now accuses of infringement here.  Akamai is practicing its own earlier-developed technologies, which do not infringe the asserted Limelight patents in any event.

8.      Limelight's fourth count ignores that its first patent application on "content delivery network cache grouping" was filed in late 2009, nearly three years after Akamai received its first patent (U.S. Patent No. 7,133,905 (the "'905 patent") on the same subject.  More troubling, Limelight was fully aware of the earlier-issued Akamai '905 patent, but it never brought the patent to the attention of the Patent Examiner who was examining the application that matured into the Limelight patent-in-suit.

9.      Finally, the last two patents Limelight asserts here are not being practiced by Akamai and are, in any event, invalid in view of the extensive prior work that Akamai and others published in this field.

10.     In short, all the patents that Limelight now asserts are invalid and/or not infringed by Akamai's solutions.  Instead, the only actionable infringement here is Limelight's continued disregard for Akamai's pioneering patents.  As the Counterclaims below allege and Akamai will prove, Limelight's current content delivery solutions, including Limelight's current U.S.-based web, media and software download business—virtually all of Limelight's global CDN business—infringe several Akamai patents.

11.     Limelight may have filed this case to draw attention away from its own proven infringement and the associated damages and interest now due Akamai in the Massachusetts litigation, but as Akamai's Counterclaims below demonstrate, Limelight has not ceased its strategy of using Akamai's technology in violation of Akamai's patent rights, or claiming Akamai innovations as its own.

12.     To redress Limelight's ongoing infringement of Akamai's other patent rights identified in the Akamai Counterclaims, and separate and apart from the damages awarded Akamai in the Massachusetts litigation, Akamai again is entitled to recover its lost profits and

other damages that have accumulated since 2010, as well as permanent injunctive relief preventing Limelight from continuing to infringe Akamai's valuable intellectual property.

## PARTIES

13.     Counterclaim Plaintiff Akamai is a Delaware corporation with its principal place of business at 150 Broadway, Cambridge, Massachusetts 02142.

14.     Counterclaim Plaintiff MIT is a world-renowned educational institution located in Cambridge, Massachusetts.

15.     Upon information and belief, including the allegations made by Limelight in Paragraph 4 of its First Amended Complaint, Counterclaim Defendant Limelight is a Delaware corporation with its principal place of business at 222 South Mill Ave., Suite 800, Tempe, Arizona 85281.

## JURISDICTION AND VENUE

16.     These Counterclaims arise under the patent laws of the United States, as enacted under Title 35 of the United States Code.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338, because this case arises under the patent laws of the United States, and under 28 U.S.C. §§ 2201-02, because an actual controversy exists between Akamai and Limelight.

17.     These Counterclaims arise out of the same transaction or occurrence that is the subject of Limelight's First Amended Complaint.  This Court has personal jurisdiction over Limelight because Limelight itself has submitted to the jurisdiction of this Court by filing its First Amended Complaint in this judicial district.  The Acts committed by Limelight that are the basis of these Counterclaims occurred in this judicial district.

18.     In its First Amended Complaint, Limelight alleges that Akamai infringes U.S. Patent Nos. 7,715,324 (the "'324 patent"), 8,750,155 (the "'155 patent"), 8,856,263 (the "'263 patent"), 8,638,002 (the "'002 patent"), 9,015,348 (the "'348 patent"), and 8,615,577 (the "'577 patent") (collectively, "the Limelight Patents-in-Suit").  Because Akamai denies that it infringes, or has ever infringed, any claim of the Limelight Patents-in-Suit, and because Akamai asserts that each of the Limelight Patents-in-Suit are invalid or unenforceable, an actual and justifiable controversy has arisen and now exists between Akamai and Limelight as to whether Akamai infringes, or has ever infringed, any valid or enforceable claim of the Limelight Patents-in-Suit.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to these Counterclaims occurred in this district, and because Limelight consented to venue by filing its First Amended Complaint in this district.

## THE AKAMAI PATENTS-IN-SUIT

20.     On November 16, 2004, U.S. Patent No. 6,820,133 (the "'133 patent"), entitled "System and Method for High-Performance Delivery of Web Content Using High-Performance Communications Protocol Between the First and Second Specialized Intermediate Nodes to Optimize a Measure of Communications Performance Between the Source and the Destination," was duly and legally issued.  A true and correct copy of the '133 patent is attached hereto as Exhibit 1.  Akamai is the owner of all right, title and interest in and to the '133 patent.

21.     On February 21, 2012, U.S. Patent No. 8,122,102 (the "'102 Patent"), entitled "Content Delivery Network (CDN) Content Server Request Handling Mechanism," was duly and legally issued.  A true and correct copy of the '102 patent is attached hereto as Exhibit 2. Akamai is the owner of all right, title and interest in and to the '102 patent.

22.     On November 6, 2012, U.S. Patent No. 8,307,088 (the "'088 patent"), entitled "HTML Delivery From Edge-of-Network Servers in a Content Delivery Network (CDN)," was duly and legally issued.  A true and correct copy of the '088 patent is attached hereto as <u>Exhibit 3</u>.  Akamai is the owner of all right, title and interest in and to the '088 patent.

23.     On April 6, 2010, U.S. Patent No. 7,693,959 (the "'959 patent"), entitled Content Distribution System Using an Alternative Domain Name System (DNS) and Content Servers," was duly and legally issued.  A true and correct copy of the '959 patent is attached hereto as <u>Exhibit 4</u>.  MIT is the owner of the '959 patent.  Akamai is the exclusive licensee of the '959 patent.

24.     On December 30, 2008, U.S. Patent No. 7,472,178 ("the '178 patent") was duly and legally issued for a "Scalable, High Performance and Highly Available Distributed Storage System for Internet Content."  A true and correct copy of the '178 patent is attached hereto as <u>Exhibit 5</u>.  Akamai is the owner of all right, title and interest in and to the '178 patent.

## <u>BACKGROUND</u>

25.     Akamai is the leading provider of Content Delivery Network (CDN) services, making the Internet fast, reliable and secure.  At the core of Akamai's solutions is the Akamai Intelligent Platform™, a next-generation CDN combined with cloud services to provide extensive reach, unmatched reliability, security, visibility and expertise.  Akamai helps enterprises around the world optimize website performance and software delivery with solutions for web acceleration, mobile optimization, application delivery, streaming video and mobile video.  Akamai removes the complexities of connecting the increasingly mobile world, supporting 24/7 customer demand, and helping enterprises provide secure, high-performing web experiences on any device, anywhere.

26.     Limelight offers CDN services in direct competition with Akamai.  Limelight boasts that it has "the world's largest, most reliable, secure private content delivery network (CDN)".  Limelight Corporate Brochure, at 3, *available at* https://www.limelight.com/company-information/ (last visited April 29, 2016).  Limelight's flagship offering is the Limelight Orchestrate™ Platform, which was designed to compete with Akamai's Intelligent Platform.  As stated in Limelight's corporate brochure, "[t]he Limelight Orchestrate platform is a suite of services that puts the power of a worldwide network and intelligent software in your hands, while simplifying the complexity of engaging a digital audience. Uniquely integrated with our private delivery infrastructure, the Orchestrate platform provides instant and reliable access to your websites, rich media, software, data, and more, from any device worldwide."  *See* Limelight Corporate Brochure, at 6.  Limelight further describes its Orchestrate Platform as follows:



Limelight Orchestrate Content Delivery Data Sheet, *available at* http://goo.gl/It3lYt (last visited April 29, 2016).

27.     There are a number of CDN services that Limelight claims to provide over the Orchestrate Platform:  delivery (global content delivery services), storage (on-network cloud origin), security (DDoS and threat protection), performance (website and app acceleration), and video (online video platform).  *See* Limelight Corporate Brochure, at 6.  The Limelight Orchestrate Platform operates on Limelight's physical network that, according to Limelight, spans "the globe with over 80 points-of-presence (PoPs)."  ASN #22822, *available at* https://www.limelight.com/ network/ (last visited April 29, 2016).  According to Limelight, the "heart of the Orchestrate platform" is the Orchestrate platform's "EdgePrism," the "caching proxy software that powers your content across the globe" and ensures that "both cacheable and uncacheable content are delivered with the lowest latency, best reliability, and highest origin offload."  EdgePrism, *available at* https://www.limelight.com/software/ (last visited April 29, 2016).

28.     To facilitate the customer's use of the Orchestrate Platform and services, Limelight says that it provides a network-accessible control management portal: "Limelight Orchestrate Control is a powerful web-based interface for managing all aspects of delivering and managing your content through the Orchestrate platform, including self-service configurations, detailed traffic reports, turning-up and managing video streams, and access to support resources."  *See* https://www.limelight.com/software/.  According to Limelight, the Configuration Manager allows customers, "[v]ia a secure, easy-to-use interface," to view, change, and implement configuration changes such as caching rules, compression, protocol, origin selection, and "more advanced functionality . . . such as TCP optimizations, WAN optimizations, failover settings, and security."  Limelight Orchestrate Content Delivery

Configuration Manager Data Sheet, *available at* http://goo.gl/h4Ls6b (last visited April 29,

2016).

29.     Limelight's Orchestrate Platform relies on a domain name server infrastructure

that Limelight provisions and manages.  *See* Feature Tour - Traffic Director, *available at*

https://goo.gl/Uc2pp5 (last visited April 29, 2016) ("Thanks to a network-diverse, globally

distributed nameserver platform with built-in redundancies, your end users will enjoy fast,

reliable performance.").

30.     Limelight's Orchestrate storage offering is known as Orchestrate Storage or

Orchestrate Cloud Storage.  As Limelight states: "Limelight Orchestrate Storage improves your

end-to-end content delivery performance like never before. Fully integrated with the global

Limelight content delivery network (CDN) and media delivery services, Orchestrate Storage

scales to meet your global access needs while pre-positioning content closer to the end users that

need it."  *See* Limelight Orchestrate Storage Data Sheet, *available at* http://goo.gl/oQsOsR (last

visited April 29, 2016).  As Limelight further describes: "Orchestrate Storage is designed for

global, enterprise-grade operations that require extremely scalable infrastructure. Whether you

are managing a large media library or streaming video to multiple time zones, Orchestrate

Storage lets you manage thousands of files with the least amount of human intervention, cost,

and complexity."  *See id.*

31.     Limelight describes further alleged benefits of its Orchestrate Cloud Storage as

follows: "Orchestrate Cloud Storage is integrated right into the edge of the network, which

means that each delivery location has the potential to store your content library. With Limelight,

that is over 80 delivery locations in 35+ metro areas around the globe. Based on your traffic

patterns (i.e., you are getting a lot of traffic from specific regions), you can modify your policies

to replicate your content accordingly and ensure that it's as close to your audience as possible."
*See* Origin Storage: The Next Level of Delivery Optimization, at 7, *available at*
http://goo.gl/aH2P7c (last visited April 29, 2016).

32.     As set forth below, Limelight Orchestrate Cloud Storage and the Orchestrate
CDN services are depicted with the Limelight Cloud Storage servers in physical and network
proximity to the Limelight edge servers that deliver content, such as video, to requesting end
users.  Limelight customers (the "Content Creator") upload the content and provision their
services on the Limelight Orchestrate platform via a web portal.  Content uploaded to the
platform is replicated across the Limelight network so that it is available from multiple physical
and network locations.  As stated, the network is present in 80+ delivery locations in 35+
metropolitan areas worldwide:



## COUNT I:
## INFRINGEMENT OF U.S. PATENT NO. 6,820,133

33.     The allegations of Paragraphs 1-34 of the Counterclaims are incorporated by
reference as if fully set forth herein.

34.     Akamai owns all right, title and interest in and to the '133 patent.

35.     Limelight's Orchestrate Platform provides for a method of content storage and delivery that Limelight markets, provisions and provides to its customers.

36.     Limelight's CDN is deployed, operated and managed by Limelight on behalf of its customers, who are participating content providers that are distinct from Limelight.

37.     On information and belief, Limelight has infringed and continues to infringe one or more claims of Akamai's '133 patent, including but not limited to claims 16, 19-20, 23-25, 58, and 62-63, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States without authority and/or importing into the United States without authority the Orchestrate Platform, which includes a CDN (Limelight's "Orchestrate Content Delivery") that is comprised of specialized edge servers using specialized protocols or other optimization or acceleration techniques to increase the performance of the network in communicating Internet messages between a source and a destination over the Internet.

38.     Specifically, on information and belief, including the publicly-available materials cited herein, Limelight's Orchestrate Content Delivery includes a CDN with "middle-mile optimization."  CDN Performance Comparison: An Exploration Into the Impact of Middle-Mile Optimization on Content Delivery Bottlenecks, at 3, 5, *available at* http://goo.gl/vF52dU (last visited April 29, 2016) ("we also wanted to understand how well our own network and middle-mile optimizations compared to some of the other, leading solutions").

39.     Limelight describes the "middle mile" as "the point of delivery after content has been requested from the origin and has been handed off to the intermediary network responsible

for returning the requested content to the access network through which the original request was made."  CDN Performance Comparison, at 5.

40.     Limelight has acknowledged publicly that "[t]o truly accelerate dynamic content, you need to be able to avoid the congestion points on the Internet and actually put in place optimizations kind of from right close to the origin and right across the end user, this middle mile, where all this traffic has to traverse and has to get towards the end user, you really need to optimize that." Video Interview of Steve Miller-Jones, Director of Product Management at Limelight, Velocity NY 2014, Sept. 24, 2014, *available at* http://goo.gl/WLrK2s (last visited April 29, 2016).

41.     On information and belief, including the publicly-available materials cited herein, Limelight's Orchestrate Platform is "a network operator with acceleration technologies" that infringes the asserted claims.  Specifically, Limelight's Orchestrate Platform uses a global network consisting of "specifically configured servers organized into large, multi-tiered logical delivery locations."  Limelight 2015 10-K Annual Report, at 6, *available at* http://investors.limelightnetworks.com/sec-filings (last visited April 29, 2016).  On information and belief, Limelight's Orchestrate Content Delivery operates by selecting specialized edge servers within its global network to increase the performance of communicating an Internet message between the source, e.g., a web client that makes a request, and the destination, e.g., a web server capable of generating a response to the request.

42.     On information and belief, including the publicly-available materials cited herein, Limelight's Orchestrate Content Delivery operates to increase the performance of traffic over the Internet by communicating Internet messages via Limelight's intermediary network comprising of a first edge server that is close to the source and a second edge server that is close to the

destination.   *See* Video Interview of Steve Miller-Jones, Director of Product Management at

Limelight, Velocity NY 2014, Sept. 24, 2014, *available at* http://goo.gl/WLrK2s (last visited

April 29, 2016).

43.     On information and belief, including the publicly-available materials cited herein,

Limelight's Orchestrate Content Delivery operates by at least (1) communicating an Internet

message from the source to the selected first edge server (that is close to the source); (2)

communicating the Internet message from the first edge server to the second edge server (that is

close to the destination), using optimization or acceleration protocols and/or techniques; and (3)

communicating the Internet message from the selected second edge server to the destination:



Review: Limelight Orchestrate Performance, *available at* https://goo.gl/zpEvU6 ("Limelight

builds a path across the middle mile, providing WAN acceleration and TCP optimization.") (last

visited April 29, 2016).  In particular, and to facilitate its delivery of dynamic content on behalf

of its customers, Limelight selects a node of a first type from one or more nodes of a first type

(e.g., Limelight content servers located closer to requesting end users) to increase the performance of communicating Internet messages between the source of the message (the requesting end user) and the destination (the Limelight customer origin server), wherein the selected node of a first type is close to the source.  Limelight also selects a node of a second type from one or more nodes of a second type (other Limelight servers or infrastructure) to increase the performance of communicating the Internet message between the source and the destination, wherein the selected node of a second type is close to the destination.  Limelight then communicates Internet messages from the source to the selected node of a first type (the "last mile") using a first communication protocol, such as TCP/IP, and it then communicates the Internet message from the selected node of a first type to the selected node of a second type (the "middle mile") using a second communication protocol that is designed to be a high-performance protocol, such as a modified TCP/IP protocol or one of the other "internode" mechanisms described in the '133 patent specification; and it then communicates the Internet message from the selected node of a second type to the destination (the customer origin, and thus the "first mile") using a third communication protocol, e.g., TCP/IP or some variant.

44.     On information and belief, Limelight's Orchestrate Content Delivery "ensure[s] the optimal delivery of web pages and resources by fine-tuning TCP connections and HTTP request and response workflows.  [Limelight] also route[s] dynamic content back to the origin using QoS on our private delivery backbone" and utilizes other "middle-mile optimization" protocols and/or techniques such as "object compression."  Limelight Orchestrate Performance Data Sheet, at 2, *available at* http://goo.gl/h3S3Rq (last visited April 29, 2016).

45.     For at least the reasons cited herein, Limelight's making, using, offering for sale, selling, and/or importing into the United States without authority, of the Orchestrate Platform,

including Orchestrate Content Delivery, includes each and every element in each of claims 16, 19-20, 23-25, 58, and 62-63, as those elements are arranged in each claim, of the '133 patent.

46.     As a result of Limelight's direct infringement of the '133 patent under 35 U.S.C. §271(a), literally or under the doctrine of equivalents, Akamai has suffered monetary damages and is entitled to damages adequate to compensate it for the infringement under 35 U.S.C. §284, but in no event less than a reasonable royalty.

47.     Upon information and belief, Limelight's infringing conduct will continue, resulting in continuing irreparable harm to Akamai, unless enjoined by this Court.

## COUNT II:
## INFRINGEMENT OF U.S. PATENT NO. 8,122,102

48.     The allegations of Paragraphs 1-49 of the Counterclaims are incorporated by reference as if fully set forth herein.

49.     Akamai owns the '102 patent.

50.     Limelight's Orchestrate Platform provides for a method of content storage and delivery that Limelight markets, provisions and provides to its customers.

51.     Limelight's CDN is deployed, operated and managed by Limelight on behalf of its customers, who are participating content providers that are distinct from Limelight.

52.     On information and belief, Limelight has infringed and continues to infringe one or more claims of Akamai's '102 patent, including but not limited to claims 1-2 and 4-7, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States without authority and/or importing into the United States without authority the Orchestrate Platform, which includes a CDN established on behalf of participating content providers and comprising a plurality of content servers and a domain name server (DNS).

53.     Specifically, on information and belief, including the publicly-available materials cited herein, Limelight's Orchestrate Platform operates by establishing a CDN managed by Limelight comprising a plurality of "specifically configured servers organized into large, multi-tiered logical delivery locations."  *See* Limelight 2015 10-K Annual Report, at 6, *available at* http://investors.limelightnetworks.com/sec-filings.

54.     On information and belief, Limelight's Orchestrate Platform provides a method of content delivery over Limelight's CDN by associating a content provider domain with a domain managed by Limelight so that DNS queries to the content provider domain are resolved by Limelight's DNS, resolving a DNS query to the content provider domain to an IP address associated with a given content server in Limelight's CDN, wherein the DNS query is resolved by Limelight's DNS using the domain managed by Limelight in lieu of the content provider domain.  *See* Limelight Networks CDN Infrastructure Overview, at LLN0095621-22.  An example "domain managed by Limelight" is shown below (with respect to Count IV) as "vo.llnwd.net," and this Limelight domain is associated with a content provider domain (as reflected in the customer's domain name) when the customer is on-boarded to use the Limelight content delivery services.  Later, and when a DNS query (associated with an end user request for the content) to the customer domain cues Limelight's domain name service to resolve the Limelight hostname.  Limelight's DNS resolves that DNS query to an IP address, and that IP address is associated with a Limelight content server.

55.     Moreover, Limelight's Orchestrate Platform provides for receiving a request for a piece of content at a given edge server within its CDN (the Limelight content server) and determining whether the piece of content is available to be served from the given edge server.  If the piece of content is available, the given edge server in Limelight's Orchestrate Platform issues

a validation request to an origin server that is authoritative for the piece of content, and upon receipt of an indication that the origin server has validated the content, the content will be served from the given edge server.  *See* Limelight Networks CDN Infrastructure Overview generally, and in particular at LLN0095622 ("If the server already had the object in cache, the HTTP headers are sent to the origin server for validation but the object is served directly from the edge server.").

56.     For at least the reasons cited herein, Limelight's making, using, offering for sale, selling, and/or importing into the United States without authority, of the Orchestrate Platform, including Orchestrate Content Delivery, includes each and every element in each of claims 1-2 and 4-7, as those elements are arranged in each claim, of the '102 patent.

57.     As a result of Limelight's direct infringement of the '102 patent under 35 U.S.C. §271(a), literally or under the doctrine of equivalents, Akamai has suffered monetary damages and is entitled to damages adequate to compensate it for the infringement under 35 U.S.C. §284, but in no event less than a reasonable royalty.

58.     Upon information and belief, Limelight's infringing conduct will continue, resulting in continuing irreparable harm to Akamai, unless enjoined by this Court.

## COUNT III:
## INFRINGEMENT OF U.S. PATENT NO. 8,307,088

59.     The allegations of Paragraphs 1-60 of the Counterclaims are incorporated by reference as if fully set forth herein.

60.     Akamai owns the '088 patent.

61.     Limelight's Orchestrate Platform provides for a method of content storage and delivery that Limelight markets, provisions and provides to its customers.

62.     Limelight's CDN is deployed, operated and managed by Limelight on behalf of its customers, who are participating content providers that are distinct from Limelight.

63.     On information and belief, Limelight has infringed and continues to infringe one or more claims of Akamai's '088 patent, including but not limited to claims 1-7 and 9, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States without authority and/or importing into the United States without authority the Orchestrate Platform, which includes a CDN apparatus comprising a plurality of content servers, a DNS, a computer name system that facilitates integration of a content provider site, software executed on a name server of the set of name servers that receives a CDN-specific domain and returns an IP address associated with at least one of the content servers, and software executed on a content server associated with the IP address to manage delivery of the markup language page.  In particular, the Limelight system includes a customer portal called Limelight Control that is used to integrate a customer's site into the Limelight CDN.  This integration occurs at least in part by the Limelight Control portal receiving a domain name associated with a markup language page of the customer, where the domain name identifies an origin server associated with a content provider, and in response, the Limelight Control portal providing a Limelight-specific domain that points to the domain name service and that is associated with the domain name (see, e.g., the "msnbc.vo.llnwd.net" hostname described below in connection with Count IV).  Further, Limelight executes name server software code on its name servers (e.g., "dns[11-14].llwnd.net" below in connection with Count IV) and returns an IP address associated with at least one of the set of content servers.  Further, the Limelight content server is a machine associated with the IP address and that includes software contained in a non-transitory computer readable medium to manage delivery of the markup language page.

64.     Specifically, on information and belief, including the publicly-available materials cited herein, Limelight provides a network-accessible control management portal, the "Limelight Orchestrate Control," to facilitate the customer's use of the Orchestrate Platform and CDN services.  *See* https://www.limelight.com/software/ (last visited April 29, 2016).



Limelight Control Management Portal Video, *available at* https://goo.gl/zBcFD3 (last visited April 29, 2016).

65.     As Limelight explains, the Configuration Manager allows customers, "[v]ia a secure, easy-to-use interface," to view, change, and implement configuration changes such as caching rules, compression, protocol, origin selection, and "more advanced functionality . . . such as TCP optimizations, WAN optimizations, failover settings, and security."  Limelight Orchestrate Content Delivery Configuration Manager Data Sheet, *available at* http://goo.gl/HAUt2v (last visited April 29, 2016).

66.     Additionally, "[a] self-service capability has been added to the Control management portal so that customers can enter their own configurations in a matter of minutes,

with global changes taking effect within 30 minutes."  Breaking News: Orchestrate V3.0 Is

Here!, *available at* https://goo.gl/y7F6aF (last visited April 29, 2016).

      67.     Limelight most recently noted that "a new generation of our Self Service portal

called Control 3" contains "[a]n improved layout and workflow makes it easier and faster to

create configuration changes." New Self Service Portal Control 3 now available!, *available at*

http://goo.gl/gFOMQW (last visited April 29, 2016):



      68.     For at least the reasons cited herein, Limelight's making, using, offering for sale,

selling, and/or importing into the United States without authority, of the Orchestrate Platform,

including the Orchestrate Control or the Orchestrate Platform Configuration Manager, includes

each and every element in each of claims 1-7 and 9 of the '088 patent.

      69.     As a result of Limelight's direct infringement of the '088 patent under 35 U.S.C.

§271(a), literally or under the doctrine of equivalents, Akamai has suffered monetary damages

and is entitled to damages adequate to compensate it for the infringement under 35 U.S.C. §284, but in no event less than a reasonable royalty.

70.     Upon information and belief, Limelight's infringing conduct will continue, resulting in continuing irreparable harm to Akamai, unless enjoined by this Court.

## COUNT IV:
## INFRINGEMENT OF U.S. PATENT NO. 7,693,959

71.     The allegations of Paragraphs 1-72 of the Counterclaims are incorporated by reference as if fully set forth herein.

72.     MIT is the owner of the '959 patent.

73.     Akamai is the exclusive licensee of the '959 patent with rights to sue for infringement of the '959 patent.

74.     Limelight's Orchestrate Platform provides for a method of content storage and delivery that Limelight markets, provisions and provides to its customers.

75.     Limelight's CDN is deployed, operated and managed by Limelight on behalf of its customers, who are participating content providers that are distinct from Limelight.

76.     On information and belief, Limelight has infringed and continues to infringe one or more claims of the '959 patent, including but not limited to claims 1-12, 15-18, 26-37, 41-48, 50, and 53-58, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States without authority and/or importing into the United States without authority the Orchestrate Platform, which includes a CDN for multiple content providers, comprising collections of CDN edge servers and a CDN name service having multiple CDN name servers.

77.     Specifically, on information and belief, including the publicly-available materials cited herein, Limelight's Orchestrate Platform uses a global network consisting of "specifically

configured servers organized into large, multi-tiered logical delivery locations."  Limelight 2015 10-K Annual Report, at 6, *available at* http://investors.limelightnetworks.com/sec-filings (last visited April 29, 2016).

78.     On information and belief, including the publicly-available materials cited herein, Limelight's Orchestrate Content Delivery provides a method of content delivery in a CDN for multiple content providers.  *See* https://www.limelight.com/customers/ (last visited April 29, 2016).

79.     On information, Limelight's Orchestrate Content Delivery operates by receiving, at the CDN name service (Limelight's DNS), first and second DNS queries, wherein the first and second DNS queries include a name that points to the CDN, wherein the name includes a character string having a first portion (e.g., net), a second portion (e.g., `llnwd` or `vo.llnwd`), and a third portion (e.g., `msnbc`), wherein the first portion is a generic top level domain, and the second portion is separated from the first portion by a period and is an identifier maintained by Limelight.  The first DNS query in the following example is a query to msnbc.vo.llnwd.net from a machine address 209.50.166.76 in Philadelphia, and the second DNS query is also a query to msnbc.vo.llnwd.net from a machine address 208.180.175.179 in Cupertino:

```
=================================
209.50.166.76 PA PHILADELPHIA 112
=================================

; <<>> DiG 9.8.1-P1 <<>> msnbc.vo.llnwd.net
;; global options: +cmd
;; Got answer:
;; ->>HEADER<<- opcode: QUERY, status: NOERROR, id: 4362
;; flags: qr rd ra; QUERY: 1, ANSWER: 2, AUTHORITY: 2,
ADDITIONAL: 2

;; QUESTION SECTION:
;msnbc.vo.llnwd.net.        IN   A
```

- 49 -

```
;; ANSWER SECTION:
msnbc.vo.llnwd.net.     350  IN   A    208.111.128.6
msnbc.vo.llnwd.net.     350  IN   A    208.111.128.7

;; AUTHORITY SECTION:
llnwd.net.          2438 IN   NS   dns13.llnwd.net.
llnwd.net.          2438 IN   NS   dns12.llnwd.net.

;; ADDITIONAL SECTION:
dns12.llnwd.net.  8773 IN   A    69.28.143.12
dns13.llnwd.net.  8773 IN   A    69.28.143.13

;; Query time: 10 msec
;; SERVER: 127.0.0.1#53(127.0.0.1)
;; WHEN: Mon Apr 25 14:56:05 2016
;; MSG SIZE  rcvd: 140

=================================
205.180.175.179 CA CUPERTINO 138
=================================

; <<>> DiG 9.8.1-P1 <<>> msnbc.vo.llnwd.net
;; global options: +cmd
;; Got answer:
;; ->>HEADER<<- opcode: QUERY, status: NOERROR, id: 60089
;; flags: qr rd ra; QUERY: 1, ANSWER: 2, AUTHORITY: 2,
ADDITIONAL: 2

;; QUESTION SECTION:
;msnbc.vo.llnwd.net.          IN    A

;; ANSWER SECTION:
msnbc.vo.llnwd.net.     350  IN   A    208.111.148.6
msnbc.vo.llnwd.net.     350  IN   A    208.111.148.7

;; AUTHORITY SECTION:
llnwd.net.          3600 IN   NS   dns14.llnwd.net.
llnwd.net.          3600 IN   NS   dns11.llnwd.net.

;; ADDITIONAL SECTION:
dns11.llnwd.net.  86400    IN   A    69.28.143.11
dns14.llnwd.net.  86400    IN   A    69.28.143.14

;; Query time: 4 msec
;; SERVER: 127.0.0.1#53(127.0.0.1)
;; WHEN: Mon Apr 25 14:56:07 2016
```

`;; MSG SIZE  rcvd: 140`

80.     On information, Limelight's Orchestrate Content Delivery operates by then returning, by the CDN name service, a response (see the ANSWER SECTION above) to each of the first and second DNS queries, where a response to the first DNS query is provided by a first CDN name server and leads to a first subset of CDN content servers, and where a response to the second DNS query is provided by a second CDN name server and leads to a second subset of CDN content servers, the second CDN name server being distinct from the first CDN name server, where information within the responses to the first and second DNS queries varies based on where the respective first and second DNS queries originate (e.g., `PA PHILADELPHIA` or `CA CUPERTINO`).

81.     For at least the reasons cited herein, Limelight's making, using, offering for sale, selling, and/or importing into the United States without authority, of the Orchestrate Platform, including Orchestrate Content Delivery, includes each and every element in each of claims 1-12, 15-18, 26-37, 41-48, 50, and 53-58 of the '959 patent.

82.     As a result of Limelight's direct infringement of the '959 patent under 35 U.S.C. §271(a), literally or under the doctrine of equivalents, Akamai and MIT have suffered monetary damages and are entitled to damages adequate to compensate them for the infringement under 35 U.S.C. §284, but in no event less than a reasonable royalty.

83.     Upon information and belief, Limelight's infringing conduct will continue, resulting in continuing irreparable harm to Akamai and MIT, unless enjoined by this Court.

### COUNT V:
### INFRINGEMENT OF U.S. PATENT NO. 7,472,178

84.     The allegations of Paragraphs 1-85 of the Counterclaims are incorporated by reference as if fully set forth herein.

85.     Akamai owns the '178 patent.

86.     Limelight's Orchestrate Platform provides for a method of content storage and delivery that Limelight markets, provisions and provides to its customers.

87.     Limelight's CDN is deployed, operated and managed by Limelight on behalf of its customers, who are participating content providers that are distinct from Limelight.

88.     Limelight's CDN comprises, on information and belief, including the publicly-available materials cited herein, (i) a plurality of Limelight content servers (the "EdgePrism" or "caching proxy software") that are organized into sets, (ii) one or more Limelight storage sites (the "Orchestrate Cloud Storage") that are distinct from the plurality of content servers, and (iii) one or more Limelight-managed domain name servers (its "globally distributed [name server] platform"), each of which is authoritative to resolve predetermined hostnames that are Limelight-specific in that they point to the Limelight network.

89.     On information and belief, including the publicly-available materials cited herein, (i) the one or more Limelight storage sites include first and second storage sites that are each located in different Internet-accessible locations and operate asynchronously and autonomously from one another, and (ii) representative Limelight customer hostnames each have a first portion uniquely associated with a given participating content provider, and a second portion (e.g., "llwnd.net") associated with Limelight.

90.     Further, the Orchestrate platform is designed for multiple customers, and Limelight operates the platform and provides cloud storage and CDN services for multiple customers.  When Limelight does so, on information and belief, including the publicly-available materials cited herein, it performs the following additional operations for each such customer that obtains both content storage and delivery: (1) Limelight establishes a content storage

directory at one of its storage sites; and (2) it then provides the content provider with a Limelight-specific hostname for use in association with the first content storage directory.  As noted above, on information and belief, the Limelight-specific hostname has a first portion uniquely associated with the content provider customer, and the second portion that points requests for content to Limelight.

91.      Limelight further provides the customer with the capability (an upload application programming interface or API) by which the customer uploads content that Limelight then stores in the content storage directory at the storage site.  That content may be a web object, a media file, or a software download that the Limelight customer desires to be stored and delivered over the Limelight content delivery network.  Then, on information and belief, including the publicly-available materials cited herein, when Limelight's name servers later receive DNS queries associated with the Limelight-specific customer hostnames, Limelight content servers are identified, and end user requests for the content are directed to those content servers to obtain the content.  If requested content is not available at a Limelight edge server, a copy of that content is then obtained from the Limelight storage site.

92.      On information and belief, including the publicly-available materials cited herein, during that storage and delivery method, the Limelight edge server is directed to one of the Limelight storage sites upon a cache miss at the edge server.

93.      Further, on information and belief, including the publicly-available materials cited herein, in the Orchestrate platform, the Limelight edge servers communicate with the storage sites securely.

94. The Orchestrate Cloud Storage service further provides, on information and belief, including the publicly-available materials cited herein, for replicating the customer content from one storage site to at least one other storage site.

95. An additional feature of the platform, on information and belief, including the publicly-available materials cited herein, is that a customer can upload content to the storage site via the FTP protocol, and that content is delivered from the edge server to the requesting client via the HTTP protocol.

96. A still further feature, on information and belief, including the publicly-available materials cited herein, is that first and second content storage directories from first and second Limelight customers can be located at different Limelight storage sites. Moreover, when a customer uploads multiple files, those files can be stored in multiple storage areas within a particular storage site. *See* Feature Tour - Cloud Storage, *available at* https://goo.gl/nUuepx (last visited April 29, 2016); Feature Tour - Hierarchical Data Structure, *available at* https://goo.gl/jiLRYo (last visited April 29, 2016).

97. For at least the reasons cited herein, Limelight's making, using, offering for sale, selling, and/or importing into the United States without authority, of the Orchestrate Platform, including the Orchestrate Cloud Storage and/or Orchestrate Content Delivery, includes each and every element in each of claims 1-4, 6-7 and 9-10 of the '178 patent.

98. As a result of Limelight's direct infringement of the '178 patent under 35 U.S.C. §271(a), literally or under the doctrine of equivalents, Akamai has suffered monetary damages and is entitled to damages adequate to compensate it for the infringement under 35 U.S.C. §284, but in no event less than a reasonable royalty.

99.     Upon information and belief, Limelight's infringing conduct will continue,

resulting in continuing irreparable harm to Akamai, unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

Akamai and MIT respectfully request a jury trial in this action on all issues so triable.

## REQUEST FOR RELIEF

Akamai and MIT respectfully request that the Court grant the following relief:

A.     Enter judgment that Akamai does not infringe, and has not infringed, any claim of the Limelight Patents-in-Suit;

B.     Enter judgment that the claims of the Limelight Patents-in-Suit are invalid;

C.     Enter judgment dismissing Limelight's First Amended Complaint with prejudice and denying Limelight any and all of the relief it has requested in this action;

D.     Declare and enter judgment that Limelight has infringed, is infringing, or will infringe one or more claims of the Akamai Patents-in-Suit;

E.     Permanently enjoin Limelight, its agents, servants, and employees, and all those in privity with it or in active concert and participation with it, from engaging in acts of infringement of the Akamai Patents-in-Suit that are irreparably harming Akamai and MIT;

F.     Award Akamai and MIT past and future damages together with prejudgment interest and post-judgment interest to compensate for the infringement of the Akamai Patents-in-Suit in accordance with 35 U.S.C. § 284 and applicable law;

G.     Enter judgment determining that this case is an exceptional case within the meaning of 35 U.S.C. § 285;

H.     Award Akamai and MIT their costs (including expert fees), disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court; and

I.     Enter such further relief that the Court deems just and proper.

Dated: April 29, 2016                    AKAMAI TECHNOLOGIES, INC. and
                                         MASSACHUSETTS INSTITUTE OF
                                         TECHNOLOGY


                                         By _____/s/_____
                                                  Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
dabney.carr@troutmansanders.com

Carlos Perez-Albuerne (BBO#: 640446) (*pro hac vice*)
Margaret E. Ives (BBO#: 668906) (*pro hac vice*)
CHOATE, HALL & STEWART LLP
Two International Place, Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
cperez@choate.com
mives@choate.com

*Counsel for Defendant and Counterclaim Plaintiff Akamai Technologies, Inc.*
*and Counterclaim Plaintiff Massachusetts Institute of Technology*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 29th day of April, 2016, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Maya M. Eckstein
HUNTON & WILLIAMS LLP
951 E. Byrd St.
Richmond, Virginia 23219
meckstein@hunton.com

Matthew D. Powers
Paul T. Ehrlich
William P. Nelson
Aaron M. Nathan
Tensegrity Law Group, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
matthew.powers@tensegritylawgroup.com
paul.ehrlich@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
aaron.nathan@tensegritylawgroup.com

*Counsel for Limelight Networks, Inc.*

Andrew J. Terrell
Michael C. Gartner
WHITEFORD, TAYLOR & PRESTON LLP
3190 Fairview Park Drive, Suite 300
Falls Church, VA 22042-4510
aterrell@wtplaw.com
mgartner@wtplaw.com

*Counsel for XO Communications, LLC*

                /s/
Dabney J. Carr, IV (VSB No. 28679)
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
dabney.carr@troutmansanders.com

*Counsel for Defendant and Counterclaim Plaintiff
Akamai Technologies, Inc. and Counterclaim
Plaintiff Massachusetts Institute of Technology*