**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| LIMELIGHT NETWORKS, INC., )<br><br>Plaintiff and Counterclaim )<br>Defendant, )<br>v. )<br><br>XO COMMUNICATIONS, LLC., )<br><br>Defendant, )<br><br>AKAMAI TECHNOLOGIES, INC. )<br><br>Defendant and Counterclaim )<br>Plaintiff, )<br><br>MASSACHUSETTS INSTITUTE OF )<br>TECHNOLOGY, )<br><br>Counterclaim Plaintiff. ) | Case No. 3:15-cv-720-JAG<br><br><br>**JURY TRIAL DEMANDED** |

**AKAMAI TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO LIMIT ASSERTED CLAIMS**

Pursuant to Local Rule 7, Defendant and Counterclaim Plaintiff Akamai Technologies, Inc. ("Akamai") submits this memorandum of law in support of its Motion to Limit Asserted Claims.

**I.    INTRODUCTION**

This case currently includes far more patent claims—***fifty claims of ten patents***—than the parties could ever practically assert at a jury trial. Akamai has made multiple attempts over the last several months to reach a mutual agreement with Limelight to reduce the number of claims. While Limelight recently agreed to an interim reduction of claims to 25 per side, and conceded

that it intends to bring no more than 10 claims to trial, it has refused to agree to a further limiting of claims by a date certain within a reasonable time prior to trial.  Given the late stage of the case—trial is now less than three months away—Limelight should be compelled to reduce the number of asserted claims to 10 by October 21, 2016.

*First*, courts routinely limit the number of asserted claims at significantly earlier stages of a case—prior to claim construction or even earlier—in recognition of the burdens and impracticality of going to trial with unreasonably large numbers of claims. "Decisions across the country support a proposition that a limit of approximately 15 claims is not inappropriate in patent litigation." *Memory Integrity, LLC v. Intel Corp.*, No. 3:15-CV-00262-SI, 2015 WL 6659674, at *2 (D. Or. Oct. 30, 2015).  Although courts frequently limit the number of claims to approximately 15, given Limelight's concession that it only intends to assert 10 claims at trial, limiting the parties to 10 asserted claims as of October 21 is appropriate in this case.

*Second*, proceeding with 50 claims of ten patents would continue to impose a massive and unjustified burden on the Court and Akamai.  Limelight concedes that it intends to bring no more than 10 claims to trial.  Continuing to proceed with 50 claims of ten patents would force the parties and the Court to needlessly devote resources to dozens of claims that will indisputably never make it to trial – at depositions, on summary judgment, and in other motion practice and trial preparation tasks.  For Limelight to continue to proceed with 25 claims of five patents would also effectively conceal from Akamai the claims that Limelight intends to bring to trial.  A reduction now would instead allow the parties and the Court to focus their resources on the claims that will actually be tried.

*Third*, Limelight will not be prejudiced by the requested claim reduction.   Limelight has received all of Akamai's technical documents, it has taken multiple depositions of Akamai fact

witnesses, and it has received Akamai's expert invalidity reports. It has all of the information it needs to make its election now. Indeed, Akamai is ready to impose the same requirement on itself and reduce its asserted claims to 10.

## II.    FACTUAL BACKGROUND

### A.    Limelight Has Sufficient Information To Determine Now What Claims To Assert At Trial

Limelight initiated this case nearly a year ago, on November 30, 2015, with a complaint against Akamai asserting infringement of six patents. Akamai responded asserting five patents against Limelight in counterclaims filed April 29, 2016. After exchanging written discovery, the parties exchanged preliminary infringement contentions on May 20, 2016. Together, the parties' infringement contentions included 155 claims—Limelight asserted 79 claims across six patents, while Akamai asserted 76 claims across five patents.

The parties subsequently engaged in intense and exhaustive fact discovery, which closed September 2. Akamai responded to Limelight's 26 interrogatories, Limelight's 98 requests for admission, and Limelight's 174 requests for production. Akamai produced nearly 600,000 of pages of documents. Akamai served initial disclosures, as well as non-infringement contentions and invalidity contentions related to all 79 of the claims Limelight originally asserted. Limelight took 15 depositions of Akamai fact witnesses, including over 90 hours of deposition from Akamai's corporate representatives. Akamai produced relevant source code beginning in May 2016. Additionally, the parties fully briefed and argued claim construction, and this Court issued its *Markman* order on September 2, 2016. Akamai served its opening report related to invalidity on September 23, 2016; its report relating to non-infringement will be served on October 19, 2016. Limelight accordingly has more than sufficient information on which to base an election of claims.

### B.     Limelight Refuses To Reduce Its Claims To A Reasonable Number

As counsel for Akamai highlighted for the Court at the conclusion of the *Markman*
hearing, Akamai has been in discussions with Limelight on narrowing of claims for some time.
Prior to claim construction, the parties could not come to agreement on a number of claims or the
timing of a process for reducing to the final claims that will be argued at trial.  Limelight
consistently has taken positions that leave larger numbers of claims at issue than could
reasonably be tried to a jury.  After the Court issued its claim construction order and in advance
of the exchange of opening expert reports, Akamai proposed to Limelight that the parties reduce
their asserted claims to 15 in order to streamline the litigation to an appropriate size.  While
Limelight participated in discussions about limitation of claims, it was unwilling to reduce to a
reasonable and practical number for trial, attempting to limit itself to 36 claims.  Limelight
ultimately agreed to an interim mutual limitation of 25 claims per side, but has refused to agree
to any further limitations prior to the Court's ruling on summary judgment, which could come on
the eve of trial.  Akamai accordingly requests that the Court require both parties to limit their
claims to no more than 10 by October 21, 2016.

## III.    ARGUMENT

### A.     Courts Routinely Require Plaintiffs To Reduce The Number of Asserted Claims To Fifteen Or Fewer

A district court has broad discretion to conduct its own proceedings.  *See, e.g.*, *Hickey v.
Baxter*, 833 F.2d 1005, at *1 (4th Cir. 1987) (table); *Landis v. N. Am. Co.*, 299 U.S. 248, 254
(1936) (recognizing "the power inherent in every court to control the disposition of the causes on
its docket with economy of time and effort for itself, for counsel, and for litigants").  As the
Federal Circuit and district courts across the country have confirmed, a district court may
exercise that discretion without offending due process by requiring a patentee to reduce the

number of claims it asserts in a given litigation. *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011) (acknowledging courts' "authority to impose a limit on the number of claims"); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011) (holding district court's claim selection process, limiting the case to 16 claims, was "both efficient and fair"); *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-CV-05184-SBA(MEJ), 2015 WL 307256, at *2 (N.D. Cal. Jan. 22, 2015) ("The Federal Circuit has held that district courts possess the authority and discretion to reasonably limit the number of claims asserted in patent infringement actions, subject to due process considerations."); *Medtronic Minimed Inc. v. Animas Corp.*, 2013 WL 3322248, at *1 (C.D. Cal. Apr. 5, 2013) ("It is undisputed that for the sake of judicial economy and management of a court's docket, a court may limit the number of asserted claims in a patent case.").

"Decisions across the country support a proposition that a limit of approximately 15 claims is not inappropriate in patent litigation." *Memory Integrity, LLC v. Intel Corp.*, No. 3:15-CV-00262-SI, 2015 WL 6659674, at *2 (D. Or. Oct. 30, 2015) (collecting cases). Courts—including the Court of Appeals for the Federal Circuit—have routinely approved limiting plaintiffs to 15 or fewer claims to make patent infringement litigation more efficient:

- *In re Katz*, 639 F.3d at 1310-1312 (affirming a limit of 16 claims per defendant from an original 1,975 claims);

- *Stamps.com Inc.*, 437 F. App'x at 900-903 (affirming a limit of 15 claims from an original 629 claims across 11 patents);

- *Select Comfort Corp. v. Gentherm, Inc.*, No. 13-cv-2314, 2014 WL 4976586, at *1-2 (D. Minn. Oct. 3, 2014) (ordering a limit of 15 claims across five patents);

- *Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, No. 13-CV-13615, 2014 WL 106926 (E.D.Mich. Jan. 10, 2014) (ordering a limit of 15 claims across five patents);

- *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2013 WL 5587559, at *3 (N.D. Cal. Oct. 10, 2013) (ordering a limit of 16 claims across seven patents);

- *Adobe Sys. Inc. v. Wowza Media Sys. LLC*, No. 11-CV-02243-JST, 2013 WL 9541126, at *1 (N.D. Cal. May 6, 2013) (ordering limit of 20 claims prior to claim construction and party agreement that trial will proceed on maximum of 15 claims);

- *Medtronic*, 2013 WL 3322248, at *2-3 (ordering reduction of asserted claims to 36 across nine patents prior to invalidity contentions and further reduction to 18 claims five months later);

- *Havco Wood Products, LLC v. Indus. Hardwood Products, Inc.*, 10-cv-556, 2011 WL 5513214, at *5-6 (W.D. Wis. Nov. 10, 2011), *amended*, 2012 WL 5199185 (W.D. Wis. Oct. 22, 2012) (ordering a limit of 15 claims from an original 135 claims across five patents);

- *Visto Corp. v. Little Red Wagon Techs., Inc.*, No. 3:11-cv-02723, 2012 WL 7989618 at *1 (N.D. Tex. Oct. 18, 2012) (ordering a limit of ten claims from an original 35 claims across five patents);

- *Fenster Family Patent Holdings, Inc., Elscint Ltd.*, No. 04-cv-0038, 2005 WL 2304190 (D. Del. Sept. 20, 2005) (ordering a limit of ten claims from an original 90 claims across five patents).

Consistent with these cases, limiting each party to 10 asserted claims in this case is appropriate given Limelight's concession that 10 claims is a workable limit for trial.

Moreover, nearly all of the courts have required patentees to reduce the number of asserted claims far earlier in the case than Akamai is requesting here. For example, many courts have ordered reduction of asserted claims at or before the exchange of infringement and invalidity contentions, and ordered further reductions at later stages. *See, e.g., Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, No. 13-CV-13615, 2014 WL 645246, at *3 (E.D. Mich. Feb. 19, 2014) (ordering initial reduction to 25 claims at contention stage and further reduction to 15 claims prior to claim construction); *Medtronic*, 2013 WL 3322248, at *2-3 (ordering reduction of asserted claims to 36 prior to invalidity contentions and further reduction to 18 claims five months later); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 285 (D. Del. 2013) (ordering reduction of claims to 36 after exchange of contentions). Other courts have ordered the limitation of claims prior to claim construction. *See, e.g., Memory*

*Integrity*, 2015 WL 6659674, at *3; *Select Comfort Corp.*, 2014 WL 4976586, at *1-2; *Adobe Sys. Inc.*, 2013 WL 9541126, at *1; *Visto Corp.*, 2012 WL 7989618 at *1; *Oasis Research, LLC v. Adrive, LLC*, No. 4:10-CV-00435, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 13, 2011); *High Point Sarl v. Sprint Nextel Corp.*, No. 09-cv-2269, 2010 WL 9497168, at *2-3 (D. Kan. Aug. 18, 2010).

**B.      Proceeding With 50 Claims At This Stage Is Impractical And Would Impose A Significant Burden On The Parties And The Court**

Continuing to proceed with a total of 50 claims of ten patents would impose a massive and unjustified burden on the Court and Akamai.

As a practical matter, Limelight has conceded during meet and confer discussions that it cannot assert 25 claims at a jury trial and that it instead intends to assert no more than 10 claims. And, indeed, numerous courts have noted that far fewer than 25 claims is appropriate for trial. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *1 (N.D. Cal. Jan. 21, 2014) (describing "streamlin[ing of] case for trial," including requiring parties to be limited to ten claims per side at summary judgment stage and five claims at trial); *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 1949051, at *3 (N.D. Cal. May 9, 2013) ("It is impractical for either side to present fifteen claims at trial. Successful patent plaintiffs almost always present only one, two or three claims to a jury"); *Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 4104116, at *5 (N.D. Cal. Aug. 27, 2008) (noting that by initially limiting claims to 25 at earlier stage, "[t]he court did not mean to imply by that reduction that 25 claims … would be an appropriate number of claims for trial," and that the court would require further reduction if not voluntarily undertaken by the patentee); *cf.* Federal Circuit Advisory Council, *A Model Order Limiting Excess Patent Claims And Prior Art* at ¶¶ 1-2 (2013), *available at*

http://patentlyo.com/media/docs/2013/07/model-order-excess-claims.pdf. ("Federal Circuit Model Order") (recommending reduction of asserted claims to 32 after invalidity contentions and further reduction to 16 for trial).

As a result, continuing to litigate all 25 Limelight asserted claims will force the Court and Akamai to needlessly devote significant resources between now and trial to claims that will indisputably never be tried. Just by way of example, Akamai will be forced to address all asserted claims in expert depositions, file summary judgment briefing related to issues raised by all claims, and prepare for trial on all remaining asserted claims – only to have Limelight then drop more than half of these claims just prior to trial. Courts have routinely required plaintiffs to limit the number of asserted claims to avoid such a needless waste of resources. *See Broadcom Corp. v. Emulex Corp.*, No. 8:09-cv-01058, Dkt. 167, at 9 (C.D. Cal. June 30, 2010) (noting that, proceeding with a large number of claims "through claim construction, summary judgment motions, and trial is an untenable proposition that would substantially drain the parties' and the Court's resources"); *cf. Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002) (noting that even a "single claim . . . may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories." (internal quotation marks omitted)).

Moreover, by asserting an unreasonably large number of claims, Limelight effectively – and unfairly – deprives Akamai of adequate notice as to which claims Limelight actually intends to pursue. By forcing Akamai to continue to litigate an unreasonably large number of claims through expert discovery and summary judgment, and then dropping many of those claims shortly before trial, Limelight prevents Akamai from giving its full attention to the claims that will actually be disputed. As a result, Limelight's continued assertion of 25 claims effectively

deprives Akamai of a full and fair opportunity to prepare its defenses for the claims that will actually be asserted at trial. *See* Federal Circuit Model Order at 1 ("Lack of discipline by the asserting party in preparing its case is often why excess issues are maintained. The inclusion of superfluous claims ... can function to 'hide the ball.'"); *Cummins-Allison Corp. v. SBM Co.*, 2009 WL 806753, at *2 (E.D. Tex. Mar. 19, 2009) (noting that, by asserting a large number of claims, plaintiff "engaged in a game of 'hide the ball' in an attempt to divert Defendant from the actual claims Plaintiff will assert at trial"); *Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-cv-00042, Dkt. 66, at 1 (E.D. Tex. Aug. 15, 2008) ("The practice of asserting an unreasonably large number of patent claims serves to obfuscate the more material issues in the case[.]").

Limelight's continued assertion of an unreasonable number of claims will similarly impose unjustified burdens on the Court – requiring it for instance to address many more claims on summary judgment than it otherwise would. *See Adobe Sys. Inc. v. Wowza Media Sys. LLC*, 2013 WL 9541126, at *1 (N.D. Cal. May 6, 2013) (reducing claims before *Markman* hearing and noting that "the court sees little reason to . . . rule on summary judgment motions that relate to claims that [Plainitff] will not be asserting at trial"); *Broadcom*, No. 8:09-cv-01058, Dkt. 167, at 9 (noting that, proceeding with a large number of claims "is an untenable proposition that would substantially drain the parties' and the Court's resources").

## C.    Limelight Will Suffer No Prejudice In Limiting Its Asserted Claims To Ten

Limelight will not be prejudiced by the requested claim reduction. Limelight has had access to written discovery responses, hundreds of thousands of pages of produced documents, non-infringement and invalidity contentions, fact depositions, opening expert reports, and the Court's *Markman* order. Accordingly, it has all of the information it needs to reduce the number of asserted claims now. Indeed, Akamai is prepared to impose the same limits on itself and reduced its asserted claims to 10.

Limelight makes a number of attempts to justify its refusal to reduce to a reasonable number of claims. It asserts that Akamai has made arguments that are inconsistent with the Court's claim construction for the '324 and '155 patents. This is incorrect. Akamai's arguments are based on the Court's construction that the claims are *not* limited to a software process that analyzes requests on a request-by-request basis. *See* Dkt. 179 [Claim Construction Order] at 2 (rejecting Limelight's argument that "each new request" should be interpreted to mean "both the first request over each new connection *but also as multiple requests within the same connection*" (emphasis added)); *id.* at 3 n.1 (explaining that the claimed system can perform the optimization process "for each new request (e.g. R2/C1) and/or []each new connection (e.g. R1/C2)"). Instead, it is Limelight that ignores the Court's construction by taking the position that the claims are limited to optimizing on a request-by-request basis.[1]

Limelight also asserts that Akamai has made new invalidity arguments regarding the '577 patent. As an initial matter, Akamai's contentions – including for the '577 patent – have been hampered by Limelight's deficient infringement contentions and untimely discovery, including offering numerous fact depositions and producing many documents only at the very end of or even after the discovery deadline. But in any event, Limelight itself has introduced new arguments only recently. For example, Limelight served supplemental infringement and

---

[1]      In particular, Limelight continues to argue that the '324 patent claims do not cover a system that merely optimizes TCP connections on a "connection-by-connection" basis, but instead, the system must also optimize TCP connections on a "request by request" basis whenever there are multiple requests within the same connection. *See* Dkt. 168 [Limelight Reply Suppl. Claim Construction Br.] at 2. As noted above, the Court rejected this argument in its claim construction order. *See* Dkt. 179 [Claim Construction Order] at 2. The Court explained that the claims are broad enough to cover a server that "modif[ies] parameters on a connection-by-connection" and/or "a request-by-request basis." *Id.* at 3. As the Court explained, the system "*can*" – but is "not *required* to" – "receive multiple requests over the same connection." *Id.*; *see also id.* at n.1 (explaining that the claimed system can perform the optimization process "for each new request (e.g. R2/C1) and/or []each new connection (e.g. R1/C2)" (emphasis added)).

invalidity contentions on the last day of fact discovery, September 2. And despite Limelight's new arguments, Akamai is willing and able to limit itself to 10 asserted claims as of October 21.

Courts have repeatedly ordered claim limitations of similar scope far earlier in the case. *See, e.g.*, *Joao Control & Monitoring Sys*, 2014 WL 645246, at *3 (ordering initial reduction to 25 claims at contention stage and further reduction to 15 claims prior to claim construction); *Medtronic*, 2013 WL 3322248, at *2-3 (ordering reduction of asserted claims to 36 prior to invalidity contentions and further reduction to 18 claims five months later). The same reasoning should apply here, in a case that is less than three months from trial. Limelight now has all the facts it needs to limit its claims to the 10 it will assert at trial.

## IV.    CONCLUSION

Akamai respectfully requests that the Court order the parties to limit their asserted claims to 10 no later than October 21, 2016.[2]

AKAMAI TECHNOLOGIES, INC.

By    /s/ Dabney J. Carr, IV    
        Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Laura Anne Kuykendall (VSB No. 82318)
TROUTMAN SANDERS LLP
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
la.kuykendall@troutmansanders.com

Carlos Perez-Albuerne (*pro hac vice*)
Margaret E. Ives (*pro hac vice*)

William F. Lee (*pro hac vice pending*)
Cynthia D. Vreeland (*pro hac vice*)
Michael J. Summersgill (*pro hac vice*)
Timothy D. Syrett (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526 6000
Facsimile: (617) 526 5000
william.lee@wilmerhale.com
cynthia.vreeland@wilmerhale.com

---

[2]    Depending on the circumstances of the case, claims dropped by the parties could ultimately be dismissed with or without prejudice. *See, e.g.*, *Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368, 1375 (Fed. Cir. 2016); *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014).

Daniel C. Winston (*pro hac vice*)
Eric J. Marandett (*pro hac vice*)
Sophie F. Wang  (*pro hac vice*)
Phoebe Fischer-Groban (*pro hac vice*)
Robert Z. Shames  (*pro hac vice*)
Vanessa A. Arslanian  (*pro hac vice*)
Diane Seol  (*pro hac vice*)
CHOATE, HALL & STEWART LLP
Two International Place, Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
cperez@choate.com
mives@choate.com
dwinston@choate.com
emarandett@choate.com
swang@choate.com
pfischergroban@choate.com
rshames@choate.com
varslanian@choate.com
dseol@choate.com

michael.summersgill@wilmerhale.com
timothy.syrett@wilmerhale.com

Mary V. Sooter (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
1225 17th Street, Suite 2600
Denver, Colorado 80202
Telephone:  617 526 6000
Facsimile:  617 526 5000
mindy.sooter@wilmerhale.com

Heath A. Brooks (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663 6363
heath.brooks@wilmerhale.com

Matthew J. Hawkinson (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone:  (213) 443 5300
Facsimile:  (213) 443 5400
matthew.hawkinson@wilmerhale.com

Arthur W. Coviello (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone:  (650) 858 6000
Facsimile:  (650) 858 6100
arthur.coviello@wilmerhale.com

*Counsel for Akamai Technologies, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 12th day of October, a true copy of the foregoing will be delivered by electronic mail by electronically mailing a true and correct copy thereof, which will send a notification of such filing (NEF) to the following:

Maya Eckstein (Va. Bar. No. 41413)
HUNTON & WILLIAMS LLP
951 E. Byrd St.
Richmond, Virginia 23219
Facsimile:  (804) 343-4630
meckstein@hunton.com

Matthew D. Powers (*pro hac vice*)
Paul T. Ehrlich (*pro hac vice*)
William P. Nelson (*pro hac vice*)
Aaron M. Nathan (*pro hac vice*)
Azra Hadzimehmedovic (*pro hac vice*)
Natasha M. Saputo (Va. Bar. No. 80893)
Robert L. Gerrity (*pro hac vice*)
Tensegrity Law Group, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
matthew.powers@tensegritylawgroup.com
paul.ehrlich@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
aaron.nathan@tensegritylawgroup.com
azra@tensegritylawgroup.com
Natasha.saputo@tensegritylawgroup.com
robert.gerrity@tensegritylawgroup.com

*Counsel for Limelight Networks, Inc.*

/s/        Dabney J. Carr, IV
Dabney J. Carr, IV (VSB No. 28679)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
dabney.carr@troutmansanders.com

*Counsel for Akamai Technologies, Inc.*