**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| LIMELIGHT NETWORKS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> XO COMMUNICATIONS, LLC., <br><br> Defendant, <br><br> AKAMAI TECHNOLOGIES, INC., <br><br> Defendant and Counterclaim Plaintiff, <br><br> MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Counterclaim Plaintiff. | Case No. 3:15cv720-JAG <br><br> **JURY TRIAL DEMANDED** |

**LIMELIGHT NETWORKS, INC.'S OPPOSITION TO AKAMAI TECHNOLOGIES,
INC.'S MOTION TO EXCLUDE THE TESTIMONY OF DR. PROWSE
IN LIGHT OF *MENTOR GRAPHICS***

Akamai's Brief (D.E. 468) does not, and cannot, dispute the plain holding of *Mentor Graphics Corp. v. EVE-USA, Inc.*, which is fatal to Akamai's *Daubert* Motion, that when the *Panduit* factors are met, no further apportionment step is required to support lost profits damages:

> We hold that **the district court did not err in refusing to further apportion lost profits** after the jury returned its verdict applying the *Panduit* factors. We conclude that, **when the Panduit factors are met, they incorporate into their very analysis the value properly attributed to the patented feature**.

851 F. 3d 1275, Nos. 2015-1470, 2015-1554, 2015-1556, 2017 U.S. App. LEXIS 4595, at *27 (Fed. Cir. March 16, 2017).[1] Akamai's *Daubert* Motion never disputed Dr. Prowse's **application** of the *Panduit* factors to the facts of this case. *See* D.E. 231, 233. Rather, Akamai argued that a further apportionment step was required **beyond** application of the *Panduit* factors. D.E. 233 at 13, 18-19. Limelight argued throughout the *Daubert* briefing and hearings that *Panduit* already includes the necessary apportionment, and *Mentor* has further confirmed that. With its position now rejected by *Mentor*, Akamai focuses on arguments against Dr. Prowse's lost profits opinions that were also rejected by *Mentor* and amount to disputes over his conclusions, not his methodology. Those disputes are grounds for cross-examination, not *Daubert* exclusion. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (a court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

I. ***MENTOR* HOLDS THAT SATISFYING THE FOUR *PANDUIT* FACTORS INCORPORATES SUFFICIENT APPORTIONMENT OF LOST PROFITS.**

Like Akamai here, the appellant in *Mentor Graphics* argued that the entire market value rule requires apportionment of lost profit damages even if the *Panduit* factors are satisfied:

> [Defendant] Synopsys does not challenge the sufficiency of [Patentee] Mentor's evidence with regard to the individual *Panduit* factors. . . . Synopsys advocates for a two-step process for calculating lost profits. First, Synopsys argues a patentee must calculate the amount of profits it lost as a result of the infringement using the *Panduit* factors. Second, **Synopsys argues a patentee must further**

---

[1] Throughout this brief, emphasis has been supplied unless otherwise noted.

>  ***apportion its lost profits to cover only the patentee's inventive contribution***.

*Mentor*, 2017 U.S. App. LEXIS 4595, at *18-19. Like the accused infringer in *Mentor Graphics*, Akamai's *Daubert* motion **did not challenge** Dr. Prowse's opinions addressing the *Panduit* factors—instead, like Synopsys, Akamai argued only that a **second** apportionment step should also be required. D.E. 233 at 13, 18-19. Akamai's argument is contrary to *Mentor* and it would be legal error to exclude Dr. Prowse's lost profits opinions here on that basis.

As Akamai quotes in its Brief at 3, the *Mentor* court cited *Ericsson* and explained that "We agree with Synopsys that apportionment is an important component of damages law generally, and we believe it is necessary in both reasonable royalty and lost profits analysis." *Mentor* at *20. However, the remainder of that paragraph from the *Mentor* decision—omitted from and ignored by Akamai's brief—soundly rejected Akamai's (and the *Mentor* appellant's) argument that apportionment was not already incorporated within the *Panduit* test:

> In this case, ***apportionment was properly incorporated*** into the lost profits analysis and in particular ***through the Panduit factors***. ***Panduit's requirement*** that patentees prove ***demand for the product as a whole*** and ***the absence of non-infringing alternatives*** ties lost profit damages to specific claim limitations and ***ensures that damages are commensurate with the value of the patented features***.

*Mentor*, 2017 U.S. App. LEXIS 4595, at *21.

In rejecting that argument, the Federal Circuit explained that lost profit damages in patent cases are analogous to "but for" compensatory damages across many other areas of law and that the *Panduit* test is an accepted method for patentees to establish lost profits damages. *Id* at *12-13. As the *Mentor* court recognized, the *Panduit* test is one approach to establishing that "but for" showing and requires a patentee to establish these four factors (and no other): "(1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made." *Id*. at *14 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir.

1978)). It is undisputed that Dr. Prowse applied this same four factor *Panduit* test methodology to his lost profit opinions in this case. *See* D.E. 276 (Limelight Opp. Br.) at 22-24, D.E. 276-1 (Prowse Initial Rep.) at ¶¶ 89-150. *Mentor* thus forecloses Akamai's argument.

II. **NEITHER *MENTOR* NOR ANY OTHER FEDERAL CIRCUIT PRECEDENT CREATES A NEW *PANDUIT* REQUIREMENT OF PROVING THAT THE PATENTED FEATURE DRIVES DEMAND FOR THE ENTIRE PRODUCT.**

Unable to address the holding of *Mentor*, which plainly rejects Akamai's argument that an admissible lost profits methodology must include a second apportionment step after the *Panduit* analysis, Akamai instead argues that proof of lost profits requires a patentee to establish that the patented feature drives demand for the product. *See* D.E. 468 at 2-4. That is not, and has never been, a requirement of the *Panduit* test and *Mentor* explicitly confirms this.

Akamai twice quotes Dr. Prowse's testimony that "none of the '324, '155, and '002 patents **are the sole drivers of demand** of the accused products." D.E. 468 at 1, 5. Like Akamai, the appellant in *Mentor* argued that the patentee did not "deserve" lost profits for the accused products where only two features among thousands were accused of infringement. *Mentor* at *19-20. However, the court rejected this argument, again pointing to *Panduit* factors 1 and 2 as sufficient to address these multi-component product concerns. *Id*. at *20-21. The court further explained that: "While there may have been other features of the emulator that were important to Intel, only Mentor [the patentee] could sell Intel an emulator with **all** the features it required." *Id*. at *24 (emphasis in original). The question thus is not whether the patented features alone drive demand, but rather whether there exist non-infringing substitutes that have **all** the features important to customers. Dr. Prowse's testimony is wholly consistent with his opinion that no acceptable non-infringing substitutes having all the features important to CDN customers existed.

The *Mentor* court articulated the same four factor *Panduit* test applied by Dr. Prowse in this case. *Compare Mentor* at *14 *with* D.E. 276-1 (Prowse Initial Rep.) at ¶¶ 89-150. The

3

portion of the *Mentor* decision that Akamai quotes selectively as purported support for its assertion that "patentees can obtain lost profits on an entire multi-component product ***only*** when the accused feature drives demand for the entire product," does not support Akamai at all. *See* D.E. 468 at 3. When that portion is read in full, without Akamai's ellipses, it is clear that the Court's statement relates to *Panduit* factor 2, absence of acceptable non-infringing alternatives:

> With such multi-component products, [it may often be the case that no one patentee can obtain lost profits on the overall product—the Panduit test is a demanding one.] A patentee cannot obtain lost profits unless [it and only it could have made the sale—there are no non-infringing alternatives or, put differently,] the customer would not have purchased the product without the infringing feature.

*Mentor* at \*25 (brackets and underlining denote language omitted by Akamai). *Mentor* confirms what Limelight has argued throughout its briefing on this issue—that the *Panduit* factors (including that "there are no non-infringing alternatives" under factor 2), already properly apportion lost profit damages to the value of the invention.[2] Dr. Prowse addressed those factors, and Akamai's disputes with his conclusions can be addressed on cross examination. D.E. 276-1 at ¶¶ 106-113; D.E. 276-2 (Prowse Reply Rep.) at ¶¶ 27-51.

Nowhere in *Mentor* does the Federal Circuit suggest it is overruling its multiple prior cases holding that *Panduit* does not require a showing that the patented feature drives demand for an accused product. *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013) ("[t]he *Panduit* factors do not require showing demand for a particular embodiment of the patented functionality" or "any allocation of consumer demand among the various limitations recited in a patent claim").[3] The *Mentor* court clearly states that it is the combination of the

---

[2] D.E. 381 (12/20/2016 Hrg. Tr.) at 56:20-57:6; D.E. 276 (Limelight's Opp. Br.) at 22-29; D.E. 398 (Limelight's Post Hrg. Br.) at 23-26; D.E. 408 (Limelight's Reply Post Hrg. Br.) at 11-13.
[3] *See also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1359-1360 (Fed. Cir. 2012) (holding the same); *Depuy Spine, Inc. v. Medtronic Sofamor Danek Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) (holding that the first Panduit factor "does not require any allocation of consumer demand among the various limitations recited in a patent claim.").

4

existing first and second *Panduit* factors that inherently address apportionment: "Together, requiring patentees to prove ***demand for the product as a whole and the absence of non-infringing alternatives*** ties lost profit damages to specific claim limitations and ***ensures that damages are commensurate*** with the value of the patented features." *Mentor* at * 15.

Akamai's reliance on the *Mentor* court's discussion of the hypothetical laptop counterfactual (D.E. 468 at 3) is consistent with this precedent and Dr. Prowse's opinions. That laptop hypothetical considered a hypothetical product with multiple important features "each are patented by separate companies" such that "no manufacturer has the right to sell them all." *Mentor* at * 25. Those were not the facts of *Mentor*, and they are not the facts here – Limelight has the right to sell a service using all of Limelight's patented features.

### III. CROSS EXAMINATION, NOT EXCLUSION, IS THE PROPER REMEDY FOR AKAMAI'S DISPUTES WITH DR. PROWSE'S CONCLUSIONS.

Because *Mentor* confirms both (1) that the *Panduit* analysis is an acceptable methodology and (2) that no further apportionment step is required beyond *Panduit*, there is no credible dispute remaining as to Dr. Prowse's lost profits ***methodology***. Akamai's characterizations of Dr. Prowse's testimony and the evidence he relies on are therefore, at best, disputes with Dr. Prowse's ***conclusions***, not his methods. *See* D.E. 468 at 1, 4-5. Those conclusions, such as whether Dr. Prowse persuasively demonstrated that the *Panduit* factors are met here (including the absence of non-infringing alternatives), are questions for the jury (and were not raised at the *Daubert* stage). Exclusion under *Daubert* based on disputes with Dr. Prowse's conclusions would be error. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595-96 (1993).[4]

---

[4] *See also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) ("It is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony. Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury").

Date: April 21, 2017 Respectfully submitted,

/s/ Natasha M. Saputo

Maya M. Eckstein (Va. Bar No. 41413)
HUNTON & WILLIAMS LLP
951 Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8788
Facsimile: (804) 343-4630
Meckstein@hunton.com

Matthew D. Powers (CA Bar No. 104795) (*pro hac vice*)
Paul T. Ehrlich (CA Bar No. 228543) (*pro hac vice*)
Azra Hadzimehmedovic (CA Bar No. 239088) (*pro hac vice*)
William P. Nelson (CA Bar No. 196091) (*pro hac vice*)
Aaron M. Nathan (CA Bar. No. 251316) (*pro hac vice*)
Robert L. Gerrity (CA Bar No. 268084) (*pro hac vice*)
Natasha M. Saputo (VA Bar No. 80893)
Lital Leichtag-Fuks (CA Bar No. 295080) (*pro hac vice*)
Yi Chen (CA Bar No. 295236) (*pro hac vice*)
Sergio Davila (CA Bar No. 302689) (*pro hac vice*)
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Facsimile: (650) 802-6001
matthew.powers@tensegritylawgroup.com
paul.ehrlich@tensegritylawgroup.com
azra@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
aaron.nathan@tensegritylawgroup.com
robert.gerrity@tensegritylawgroup.com
natasha.saputo@tensegritylawgroup.com
lital@tensegritylawgroup.com
yi.chen@tensegritylawgroup.com
sergio.davila@tensegritylawgroup.com

*Attorneys for Plaintiff and Counterclaim Defendant Limelight Networks, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of April, 2017, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

                                                 /s/ *Natasha M. Saputo*
                                                 Natasha M. Saputo