IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LIMELIGHT NETWORKS, INC., <br><br>    Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> XO COMMUNICATIONS, LLC., <br><br>    Defendant, <br><br> AKAMAI TECHNOLOGIES, INC. <br><br>    Defendant and Counterclaim Plaintiff, <br><br> MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br>    Counterclaim Plaintiff. | Case No. 3:15-cv-720-JAG <br><br> **JURY TRIAL DEMANDED** |

**AKAMAI TECHNOLOGIES, INC.'S RESPONSE TO**
**LIMELIGHT'S NOTICE OF SUPPLEMENTAL AUTHORITY (DKT. 550)**

The Federal Circuit's recent decision in *Exmark Manufacturing Company, Inc. v. Briggs & Stratton Powers Products Group, LLC*, No. 2016-2197, 2018 U.S. App. LEXIS 783 (Fed. Cir. Jan. 12, 2018), should not change the Court's decision to exclude Dr. Prowse's reasonable royalty opinion on the '002 patent. *Exmark* does not show "that it would be a straightforward violation of precedent to grant Akamai's motion." *See* Dkt. 550 ("Notice"), at 1. To the contrary, *Exmark* confirms that Dr. Prowse's opinion was properly excluded.

The ultimate holding in *Exmark*—that a new trial was warranted because the damages opinions were not sufficiently tied to the facts of the case—only underscores that Dr. Prowse's

'002 opinion was properly excluded. In particular, *Exmark* expressly states that when a patent claim is directed to an entire system, and many of the claim elements merely "recite conventional features" of the system (as is the case with the Akamai system accused of infringing the '002 patent), with only a subset of the claim elements directed to "the patented improvement," then the "patent owner must apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product." 2018 U.S. App. LEXIS 783 at *27-28. In *Exmark*, the Federal Circuit faulted the expert for adopting a 5% royalty rate because, while the "expert acknowledged that other elements of the mowers affect sales and profits of the mowers, including durability, reliability, brand position, dealer support, and warranty," "she failed to conduct any analysis indicating the degree to which these considerations impact the market value or profitability of the mower and therefore impacted her suggested 5% royalty rate." *Id*. at *34. Dr. Prowse has done the same here.

Notably, Limelight never mentions in its Notice that the court ultimately **excluded** the patentee's damages expert for reasons that are equally applicable to Dr. Prowse.

Contrary to Limelight's claim that Akamai only challenged Dr. Prowse's choice of royalty **base** (Notice at 1), Akamai has addressed Dr. Prowse's failure to apportion either the royalty base or the royalty rate.[1] Dr. Prowse's use of a royalty rate from Akamai's Cotendo acquisition suffers from the same flaw as in *Exmark*—Dr. Prowse has "failed to adequately tie the . . . proposed reasonable royalty rate to the facts of this case," including because Dr. Prowse's royalty rate failed to apportion to reflect the value of the alleged "patented improvement," as compared to the "conventional features" of the system. *See Exmark*, 2018 U.S. App. LEXIS 783, at *31.

---

[1] *E.g.*, Dkt. 393 at 12 ("By taking a rate that was applied to Cotendo revenues for Cotendo's products and instead applying it to Akamai revenues for Akamai's products, Dr. Prowse inappropriately compared apples to oranges.").

Dr. Prowse used as a starting point for his royalty rate a 15% rate that had been applied to revenues of an acquired company, Cotendo, thereby making an apples to oranges comparison. *See* Dkt. 388 at 191:7-192:7.  Indeed, Limelight itself succeeded in excluding Akamai's expert Paul Meyer for his reliance on Cotendo and other acquisition valuations, arguing that the "completed technology" addressed in such valuations "can include rights well beyond the U.S. nonexclusive license at issue in the hypothetical [negotiation]." Dkt. 240 at 13.  Dr. Prowse then derived his ultimate 8% rate through reliance on the claimed comparability of a patent application that Cotendo ultimately abandoned, rendering the application worthless.  Dkt. 388 at 192:8-194:19.  As in *Exmark*, this royalty rate was not sufficiently "tie[d] . . . to the facts of the case" because there was no showing that a royalty rate for Cotendo's ultimately worthless patent reflected the value of the "patented improvement" in the '002 patent, as compared to the "conventional features" of the claimed system, let alone Akamai's entire CDN.  *Exmark*, 2018 U.S. App. LEXIS 783, at *31; *see also Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (requiring both technical and economical comparability of licenses).

Further, as in *Exmark*, Dr. Prowse failed sufficiently to account for other, unpatented features of the accused system.  Dr. Prowse conceded that the accused cache hierarchy functionality represents only one of many features in Akamai's content delivery network:

> Q. Now, Akamai's intelligent platform includes many features that contribute to its functionality; correct?
>
> A. Yes, I think that is true.
>
> Q. It includes the cache hierarchy system that Limelight [ha]s accused of infringement; right?
>
> A. Yes, includes that.

> Q. But it also includes many other features; correct?
>
> A. Yes, my understanding is that it does.
>
> Q. You haven't calculated how many other features it does include; correct?
>
> A. No, I have not.

Dkt. 388 at 183:9-19.  Yet Dr. Prowse failed to account for those facts in his determination of the royalty rate.

The Federal Circuit faulted Exmark's expert for doing the same: "Exmark's expert acknowledged that other elements of the mowers affect sales and profits of the mowers, including durability, reliability, brand position, dealer support, and warranty.  But she failed to conduct any analysis indicating the degree to which these considerations impact the market value or profitability of the mower and therefore impacted her suggested 5% royalty rate." *Exmark*, 2018 U.S. App. LEXIS 783, at *34.  *Exmark* thus confirms that Dr. Prowse's multiple misuses of the Cotendo-based royalty rate—in its derivation and then its improper apportionment—justify the exclusion of his '002 reasonable royalty opinion.

Moreover, it is incorrect that *Exmark* does away with concern for the improper use of the entire price of a product, as Dr. Prowse has done here.  The Federal Circuit has made clear that concern with using the entire price of a product as a royalty base implicates two rules: "There is one substantive legal rule, and there is a **separate evidentiary principle**; the latter assisting in reliably implementing the rule when—in a case involving a per-unit royalty—the jury is asked to choose a royalty base as the starting point for calculating a reasonable royalty award." *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (emphasis added).  The purpose of the evidentiary rule "is to help our jury system reliably implement the substantive statutory requirement of apportionment of royalty damages to the invention's value." *Id.*  In

particular, the evidentiary rule requires that "where a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, ***care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product***." *Id.* (emphasis added). This evidentiary principle is intended to avoid skewing the jury's deliberations by introducing entire revenue figures that are not related to the claimed functionality in the asserted patent. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011))); *Uniloc*, 632 F.3d at 1320 ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."). Nothing about the Federal Circuit's decision in *Exmark* indicates that the court overruled this important and well-established evidentiary principle. Nor could the panel have even done so. *See* Fed. Cir. R. 35(a)(1) ("only the court en banc may overrule a binding precedent").

Here, the evidentiary principle of the entire market value rule is particularly needed to prevent an unreliable outcome. Dr. Prowse applies his 8% royalty to a royalty base of over ***$2.3 billion*** attributable to sales relating to Akamai's entire system. *See* Dkt. 232 at 8-9. Given these facts, a jury could not help but have its assessment of the reasonableness of the $188 million in damages Dr. Prowse determined skewed by comparison to $2.3 billion in overall revenue.[2]

---

[2] Moreover, the facts in *Exmark* differ from the facts here in significant respect. In *Exmark*, the court looked to the existence of a settlement license agreement that used a percentage royalty rate of sales revenue of the accused

AKAMAI TECHNOLOGIES, INC.

By    /s/ Dabney J. Carr, IV

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Laura Anne Kuykendall (VSB No. 82318)
TROUTMAN SANDERS LLP
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr @troutmansanders.com
robert.angle@troutmansanders.com
la.kuykendall@troutmansanders.com

Carlos Perez-Albuerne (*pro hac vice*)
Margaret E. Ives (*pro hac vice*)
Daniel C. Winston (*pro hac vice*)
Eric J. Marandett (*pro hac vice*)
Sophie F. Wang (*pro hac vice*)
Phoebe Fischer-Groban (*pro hac vice*)
Robert Z. Shames (*pro hac vice*)
Vanessa A. Arslanian (*pro hac vice*)
Diane Seol (*pro hac vice*)
CHOATE, HALL & STEWART LLP
Two International Place, Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
cperez@choate.com
mives@choate.com
dwinston@choate.com
emarandett@choate.com
swang@choate.com
pfischergroban@choate.com
rshames@choate.com
varslanian@choate.com
dseol@choate.com

William F. Lee (*pro hac vice*)
Michael J. Summersgill (*pro hac vice*)
Cynthia D. Vreeland (*pro hac vice*)
Timothy D. Syrett (*pro hac vice*)
WILMERHALE LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526 6000
Facsimile: (617) 526 5000
william.lee@wilmerhale.com
michael.summersgill@wilmerhale.com
cynthia.vreeland@wilmerhale.com
timothy.syrett@wilmerhale.com

Mary V. Sooter (*pro hac vice*)
WILMERHALE LLP
1225 17th Street, Suite 2600
Denver, Colorado 80202
Telephone: 617 526 6000
Facsimile: 617 526 5000
mindy.sooter@wilmerhale.com

Heath A. Brooks (*pro hac vice*)
WILMERHALE LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663 6363
heath.brooks@wilmerhale.com

Arthur W. Coviello (*pro hac vice*)
WILMERHALE LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858 6000
Facsimile: (650) 858 6100
arthur.coviello@wilmerhale.com

---

lawnmowers. 2018 U.S. App. LEXIS 783, at *31. In this way, the expert's reliance on a royalty base mirrored the relevant "real-world bargaining that occurs, particularly in licensing." *Id*. at *30-31. As the Court is aware, there is no such licensing evidence here to suggest a practice of using sales revenue as a royalty base. To the contrary, the settlement licenses in this case were all lump sum agreements. Dkt. 240 Ex. 3 (Meyer Report) ¶¶ 99-104, 165-176.

*Counsel for Akamai Technologies, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 29th day of January 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which then will send automatic notification of such filing (NEF) to the following:

Maya Eckstein(Va. Bar. No. 41413)
HUNTON & WILLIAMS LLP
951 E. Byrd St.
Richmond, Virginia 23219
Facsimile: (804) 343-4630
meckstein@hunton.com

Matthew D. Powers (*pro hac vice*)
Paul T. Ehrlich (*pro hac vice*)
William P. Nelson (*pro hac vice*)
Aaron M. Nathan (*pro hac vice*)
Azra Hadzimehmedovic (*pro hac vice*)
Natasha M. Saputo (Va. Bar. No. 80893)
Robert L. Gerrity (*pro hac vice*)
Tensegrity Law Group, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
matthew.powers@tensegritylawgroup.com
paul.ehrlich@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
aaron.nathan@tensegritylawgroup.com
azra@tensegritylawgroup.com
Natasha.saputo@tensegritylawgroup.com
robert.gerrity@tensegritylawgroup.com

*Counsel for Limelight Networks, Inc.*

/s/      Dabney J. Carr, IV
Dabney J. Carr, IV (VSB No. 28679)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

*Counsel for Akamai Technologies, Inc.*