IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LIMELIGHT NETWORKS, INC.,
          Plaintiff,

v.                                   Civil Action No. 3:15-cv-720-JAG

XO COMMUNICATIONS, LLC
and AKAMAI TECHNOLOGIES INC.,
          Defendants.

## OPINION

The Court now addresses three lingering pretrial issues before the jury trial set to begin

on April 2, 2018. First, defendant Akamai has moved for summary judgment dismissing claims

relating to the '155 Patent. Second, the Court previously excluded Limelight's expert from

testifying about reasonable royalty damages and granted Limelight leave to file a proffer on other

evidence in the record to support such damages. Akamai has moved to strike the proffer.

Finally, Akamai moved the Court to reconsider its claim construction of the '002 Patent's

"neighboring server" term.

For the reasons stated below, the Court grants the motion for summary judgment because

the undisputed evidence shows that Akamai does not infringe on Limelight's '155 Patent. The

Court also grants the motion to strike Limelight's royalty damages proffer because Limelight

does not provide a reliable damages theory to present to the jury. Finally, the Court grants the

motion to reconsider because it misunderstood the parties' prior arguments about the proper

construction of the '002 Patent.

## I. AKAMAI DOES NOT INFRINGE ON LIMELIGHT'S '155 PATENT

A court should grant summary judgment on patent non-infringement if the undisputed

evidence shows that the accused product does not incorporate every limitation of a claim in an

asserted patent, either literally or under the doctrine of equivalents.[1] *Fellowes, Inc. v. Michilin Prosperity Co.*, 491 F. Supp. 2d 571, 584 (E.D. Va. 2007) (citing *MicroStrategy, Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005)). If even one claim limitation is missing or not met, there is no infringement. *Id.* "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *Id.* (quoting *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007)).

As the Court previously held, the '155 Patent Claim 1 teaches a method where a server receives:

> a request for content and the system determines certain network parameters related to performance. Next, the system determines one or more first values of attributes on the network based on the parameters of the network. The system then modifies a second set of values to result in the determined first values. Then "the second values of the attributes" thereafter influence processing and memory capabilities.

(Jan. 19, 2018 Opinion, Dk. No. 547.) Importantly, "second values" means the original (non-modified) values of the attributes for the first connection, and these non-modified second values influence "processing or memory capabilities of the part or all of the system supporting the first

---

[1] In patent cases, as in all civil cases, Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

connection."[2] ('155 Patent, Claim 1.) As stated in the Court's previous Opinion, Limelight points to record evidence that Akamai's system "retains and later uses the original values of the 'second values' even after the second values have been modified." (Almeroth Decl., Dk. No. 536-37, at ¶ 20.) The Court directed the parties to brief the issue of whether Akamai uses the retained values to "influence memory and processing" as required by Limelight's '155 Patent.

The only area in which Limelight claims that Akamai uses retained, non-modified values to thereafter influence processing and memory capabilities occurs not on the *first connection* as required by the '155 Patent, but instead when Akamai uses non-modified default values to influence processing and memory "whenever there is a new connection." (Limelight's Supplemental Brief at 2, Dk. No. 565.) At the hearing held on March 23, 2018, Limelight pointed to slides 79 through 81 to try to prove that Akamai's system uses the default values over the same connection, but none of the slides actually show that to be true. The fact that Akamai's system retains non-modified values as defaults to influence memory and processing over new connections does not infringe on the '155 Patent's claim that teaches a method that uses the non-modified values to influence memory and processing capabilities of the first connection. This is Limelight's only infringement theory, and the undisputed evidence does not show that Akamai's system meets all of the limitations within the '155 Patent in light of the Court's claim construction. The Court therefore dismisses Limelight's infringement claims related to the '155 Patent.

---

[2] Limelight argues that Akamai has improperly asked the Court for a new claim construction in its reply brief in support of summary judgment, but the Court rejects this premise. Akamai's reply merely responded to new infringement arguments made by Limelight in its opposition brief, and the Court allowed two additional rounds of briefing on this matter. Akamai's proposed reading of the claim comes from the plain language of the patent, and the parties have had ample opportunity to brief the issue.

## II. AKAMAI'S MOTION TO STRIKE LIMELIGHT'S DAMAGES PROFFER

At a hearing on December 1, 2017, the Court indicated that it would exclude Dr. Prowse's testimony related to royalty damages for Limelight's '155 and '002 Patents but permitted Limelight to proffer other evidence to support its damages claims. Limelight has done so, and Akamai moved to strike the proffer. The Court addresses the motion only as to the '002 Patent, as the Court has dismissed the claims related to the '155 Patent. The Court will not address Akamai's Rule 26 arguments on this issue because Limelight fails on the merits to establish a damages theory which it can present to a jury.

In its *Daubert* opinion, the Court previously excluded Prowse's reasonable royalty analysis for the '002 Patent because he failed to apportion the 8% royalty rate to Akamai's revenues tied specifically to the '002 Patent. Instead, Prowse looked to the fact that Akamai paid a competitor—Cotendo—a 15% royalty on all of its technology (based on Cotendo's revenues) at the time it acquired Cotendo. Prowse determined that the comparable technology in that transaction accounted for 59% of Cotendo's worth, and calculated an effective 8.9% royalty paid on the comparable technology in that transaction. Prowse then lowered that to 8% based on the *Georgia Pacific* factors and applied it to Akamai's full revenues. The Court rejected this methodology because Prowse did not apportion the royalty base (meaning the percentage of Akamai's revenues tied to the technology) but instead sought to apportion the royalty rate based on a comparable technology's incremental value to a separate company. The Court found that reverse engineering a royalty rate based on a patent's importance to one company did not adequately apportion the value of that technology in a way that would allow Prowse to apply that rate to Akamai's entire revenues without further apportioning the royalty base.

Limelight now seeks to apply Prowse's 8% rate to an apportioned royalty base. Limelight plans to present evidence that Akamai's system results in a cache miss at the initial edge server approximately 50% of the time and that almost all of Akamai's customers use the accused Ping Likely Peers feature. Limelight essentially argues that the accused system uses the patented feature for 45% of its traffic and that 45% of Akamai's overall revenues therefore represent a reasonable royalty base against which it can apply the 8% royalty.

"While any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual basis for a determination of a reasonable royalty.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (citation omitted). That said, a court "must award damages in an amount no less than a reasonably royalty" when infringement is found. *Id.* (finding that the plaintiff did not support their damages theory on which the jury determined damages but remanding to the district court to determine whether the plaintiff could establish damages under a different theory) (citation omitted). At the end of the day, "[a] reasonable royalty analysis requires that the 'trial court . . . carefully tie proof of damages to the claimed invention's foot in the market place.'" *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)) (punctuation in original).

Here, the Court has given Limelight a number of chances to make a damages case, including allowing the new theories proposed here. The Court understands that Limelight initially sought to apportion the royalty rate to the value of the technology within the '002 Patent by determining the effective rate that Akamai paid Cotendo. After the Court rejected that approach, Limelight now seeks to apportion the royalty base. Limelight's proffer still fails to

explain how the 8% rate and the newly proposed base actually show the incremental value that the '002 Patent adds to Akamai's product offerings. The Federal Circuit recently explained that "the percentage of web traffic handled" by a network "is not a proxy for the incremental value of the patented technology . . . ." *Finjan, Inc.*, 879 F.3d at 1311 ("[T]he fact that Finjan has established a royalty base based on the 'smallest, identifiable technical component' does not insulate them from the 'essential requirement' that the 'ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'") (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). Reducing the royalty base to 45% of Akamai's revenues based on the fact that 45% of network traffic uses the patented feature ignores the fact that the system depends on many other patents. Further apportionment would therefore be necessary to determine the incremental value of the '002 Patent to Akamai's revenues. The Court will not allow Limelight to make these arguments to a jury. The reasonableness of Prowse's 8% figure relies on applying that royalty rate to a properly apportioned royalty base. Limelight now seeks, without the aid of an expert, to apply Prowse's 8% rate to a damages base that the Court would preclude an expert from testifying about, were an expert available. For this reason, the Court will not permit Limelight to apply Dr. Prowse's 8% royalty rate to an unsupported royalty base.

In light of the Court's determination that Limelight cannot apply Dr. Prowse's 8% royalty rate to its proposed base, Limelight proposes allowing the jury to decide (1) which portion of the 15% Cotendo royalty should apply to (2) which portion of Akamai's total revenues. This fallback position would give the jury no direction whatsoever and could result in damages four times greater than what Limelight has proposed is reasonable in its current proffer. The Court will not let a jury pick a royalty rate between zero and fifteen percent just because Akamai paid

Cotendo a 15% royalty, based on Cotendo's revenues, for comparable technology. *Finjan, Inc.*, 879 F.3d, 1313 at n. 2 ("We agree [that] the statute's direction to award damages 'in no event less than a reasonable royalty' does not mean that the patentee need not support the award with reliable evidence.") (citing 35 U.S.C. § 284). Limelight's proffer fails to present reliable evidence that would help a jury select a proper royalty rate or a proper royalty base based on Akamai's vast revenues that rely on hundreds of patents. The Court will therefore grant Akamai's motion to strike.

### III. AKAMAI'S MOTION TO RECONSIDER

In the Court's January 19, 2018, Opinion, the Court construed the term "one or more neighboring servers" in Limelight's '002 Patent to mean "servers that are gathered in a group as neighbors with respect to a piece of content." Akamai has moved to reconsider, pointing out that the Court's analysis focused only on the "gathered in a group as neighbors" portion of the construction without considering the "with respect to a piece of content" part. Akamai is correct, and the Court will amend its construction of "neighboring servers" to mean "servers that are gathered in a particular group as neighbors."

Under Federal Rule of Civil Procedure 54(b), "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). A court can reconsider a prior decision where the court "has patently misunderstood a party." *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (citing *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997)).

In its previous Opinion, the Court focused entirely on the fact that the patent gathers servers in a particular group and did not consider the import of the phrase "with respect to a

piece of content." The Court instead understood the phrase to mean "in response to a request for a piece of content." The specification makes clear, however, that the neighboring servers are not limited to embodiments that gather servers in groups based solely on responses to a particular type or kind of content. To the contrary, one embodiment says that it knows the capabilities of the various edge servers to store and deliver particular content, but other embodiments state that the system does not have awareness of the edge servers' particular capabilities and assigns the requests based on which servers have the least amount of connections or the fastest response time. These alternative embodiments can assign the packet flow "somewhat arbitrarily using round robin or random methodologies." ('002 Patent, 4:14-41.) The Court does not amend its decision that the '002 Patent teaches a system in which the neighboring servers are gathered in a particular group, but the embodiments themselves reveal that the particular server groups are not always based on how to respond to a particular piece of content. Instead, the specification shows that the neighboring servers can be gathered in a particular group with respect to network congestion or fastest response times. Indeed, the specification says that the "caches gathered in a particular group as neighbors can be the other servers in the current POP, less loaded servers in the current POP, servers having the capability to process the content object, a subset of servers assigned to a customer using the CDN to serve the content object, or some other grouping of servers in the POP." (*Id.* at 4:24-29.)

As the Court previously stated, "claims must 'not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (quoting *Innova/Pure Water, Inc., v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004)). For that reason, "'a claim construction that excludes a preferred

embodiment . . . is rarely, if ever correct and would require highly persuasive evidentiary support.'" *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014) (quoting *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003)) (punctuation in original). The patent specification here teaches embodiments that assign requests within the particular server groups based on "less loaded servers," servers "with the least amount of connections," or even "arbitrarily using round robin or random methodologies." To read these embodiments out of the specification and define neighboring servers only as those grouped with respect to a piece of content would unduly limit the patent's claims and exclude clear embodiments contained within the specification. The Court, therefore, will grant the motion to reconsider.

## IV. **CONCLUSION**

For the reasons stated above, the Court grants Akamai's motion for summary judgment, motion to strike Limelight's damages proffer, and motion to reconsider.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: March 23, 2018
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge