# Exhibit C

## Joint Proposed Final Jury Instructions With Authority

# TABLE OF CONTENTS

INSTRUCTION NO. 1 – Province of the Court..................................................................... 1

INSTRUCTION NO. 2 – Province of the Jury..................................................................... 2

INSTRUCTION NO. 3 – Pleadings Are Not Evidence ....................................................... 3

INSTRUCTION NO. 4 – Evidence in the Case................................................................... 4

INSTRUCTION NO. 5 – Consideration of the Evidence, Direct and Circumstantial Evidence.... 6

INSTRUCTION NO. 6 – Credibility of Witnesses.............................................................. 7

INSTRUCTION NO. 7 – Depositions and Prior Testimony ............................................... 9

INSTRUCTION NO. 8 – Opinion Evidence and Expert Witnesses ................................. 10

INSTRUCTION NO. 9 – Summary of the Issues ............................................................. 11

INSTRUCTION NO. 10 – Claim Construction Generally................................................ 13

INSTRUCTION NO. 11 – Claim Construction for the Case ............................................ 15

INSTRUCTION NO. 12 – Person of Ordinary Skill in the Art........................................ 16

INSTRUCTION NO. 13 – Infringement Generally .......................................................... 17

INSTRUCTION NO. 14 – Direct Infringement – Knowledge of the Patent and Intent to Infringe are Immaterial............................................................................................... 19

INSTRUCTION NO. 15 – Literal Infringement – Types of Claims.................................. 21

INSTRUCTION NO. 16 – Literal Infringement – Infringement under the Doctrine of Equivalents ............................................................................................... 24

INSTRUCTION NO. 17 – Invalidity – Summary of Invalidity Defenses ........................ 26

INSTRUCTION NO. 18 – Invalidity – Prior Art to the 002 Patent.................................. 28

INSTRUCTION NO. 19 – Invalidity – Effective Filing Date of 002 Patent .................... 30

INSTRUCTION NO. 20 – Invalidity – Prior Art for the 348 Patent ................................ 32

INSTRUCTION NO. 21 – Invalidity – Anticipation ........................................................ 33

INSTRUCTION NO. 22 – Invalidity – Anticipation – Prior Public Use for the 002 Patent ....... 35

i

INSTRUCTION NO. 23 – Invalidity – Anticipation – Prior Public Use for the 348 Patent ....... 40

INSTRUCTION NO. 24 – Defense of Noninfringement Based on Prior Commercial Use for the 002 Patent ............................................................................................................... 43

INSTRUCTION NO.  25 – Invalidity – Obviousness ................................................................. 45

INSTRUCTION NO. 26 – Damages – Generally ....................................................................... 50

INSTRUCTION NO. 27 – Damages – Date Damages Begin ..................................................... 52

INSTRUCTION NO. 28 – Damages – Date Damages Begin ..................................................... 53

INSTRUCTION NO. 29 – Lost Profits – Generally .................................................................. 54

INSTRUCTION NO. 30 – Lost Profits – Panduit Factors – Demand ........................................ 57

INSTRUCTION NO. 31 – Lost Profits – Panduit Factors – Demand ........................................ 58

INSTRUCTION NO. 32 – Lost Profits – Noninfringing Substitutes – Acceptability ................. 60

INSTRUCTION NO. 33 – Lost Profits – Market Share ............................................................. 63

INSTRUCTION NO. 34 – Lost Profits—Noninfringing Substitutes—Availability ................... 64

INSTRUCTION NO. 35 – Lost Profits – Panduit Factors – Capacity ........................................ 65

INSTRUCTION NO. 36 – Lost Profits– Panduit Factors – Amount of Profit ............................ 66

INSTRUCTION NO. 37 – Lost Profits - Apportionment ........................................................... 67

INSTRUCTION NO. 38 – Reasonable Royalty – Entitlement ................................................... 68

INSTRUCTION NO. 39 – Reasonable Royalty – Generally ...................................................... 69

INSTRUCTION NO. 40 – Damages – Lump Sum Royalty ....................................................... 71

INSTRUCTION NO. 41 – Damages – Reasonable Royalty ....................................................... 72

INSTRUCTION NO. 42 – Damages – Apportionment of Reasonable Royalty .......................... 75

INSTRUCTION NO. 43 – Deliberate – Verdict ........................................................................ 77

**INSTRUCTION NO. 1 – Province of the Court**

Members of the Jury:

You have now heard all of the evidence in the case as well as the final arguments. It becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision in the case. In any jury trial there are, in effect, two judges. I am one of the judges; the other is the jury. It is my duty to preside over the trial and to decide what testimony and evidence is relevant under the law for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

AUTHORITY: Judge Gibney's Stock Civil Jury Instructions, No. 1.

**INSTRUCTION NO. 2 – Province of the Jury**

You, as jurors, are the judges of the facts. But in determining what actually happened in this case – that is, in reaching your decision as to the facts – it is your sworn duty to follow the law as I explain it to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors, and they have the right to expect nothing less.

AUTHORITY: Judge Gibney's Stock Civil Jury Instructions, No. 2.

**INSTRUCTION NO. 3 – Pleadings Are Not Evidence**

Although this lawsuit has been filed, you must remember that these pleadings are only allegations.  They are not evidence.  Limelight and Akamai, have the burden of proving their respective claims according to the applicable burdens of proof, which I will explain to you in detail later.

AUTHORITY: Judge Gibney's Stock Civil Jury Instructions, No. 3, with modifications.

**INSTRUCTION NO. 4 – Evidence in the Case**

The evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated; and all facts and events which may have been judicially noticed.

Statements and arguments of counsel are not evidence in the case, unless made as an admission or stipulation of fact.

Objections and my rulings on the objections are not evidence, and do not indicate my view on how you should decide the case.

Also, during the course of trial I occasionally made comments to the lawyers, or asked questions of a witness, or admonished a lawyer or admonished a witness concerning the manner in which he or she should respond to the questions of counsel.  Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

When the attorneys on both sides stipulate or agree as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

Certain demonstrative exhibits that have not been received in to evidence have been shown to you in the course of the trial. Those demonstrative exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

Certain evidence has been admitted only for a limited purpose.  Where I instructed you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

Any evidence as to which an objection was sustained by the Court, and any evidence ordered stricken by the Court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the bald statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts which you find have been proved, such reasonable inferences as you feel are justified in the light of experience.

AUTHORITY: Judge Gibney's Stock Civil Jury Instructions, No. 4, with additions according to the Final Jury Instruction, Nos. 19 and 13 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne) (the "Samsung Final Jury Instruction"), and Ninth Circuit Manual of Model Jury Instructions (2017), Instruction 1.11.

**INSTRUCTION NO. 5 – Consideration of the Evidence, Direct and Circumstantial Evidence**

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

You may also consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating the existence of some other fact. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It requires only that you weigh all of the evidence.

AUTHORITY: Judge Gibney's Stock Civil Jury Instructions, No. 5.

**INSTRUCTION NO. 6 – Credibility of Witnesses**

You must, during your deliberations, decide what weight shall be given to the evidence. To do this, you must determine the credibility or truthfulness of the witnesses who have testified before you. You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe the testimony given by any witness in whole, in part, or not at all.

In testing the credibility of witnesses, you may consider any relationship a witness may have to either side of the case and his or her interest, if any, in the verdict to be rendered. You may consider behavior of the witnesses upon the witness stand; their manner of testifying; the reasonableness and the probability of their testimony being true or not true; the opportunity they had to see, hear, and know the things about which they testified; the accuracy of their memories; their candor or lack of candor; and their intelligence, interest, and bias, if any. You may consider the extent to which, if at all, the testimony given by any witness is supported or contradicted by other evidence in the case. You should consider, in sum, all of the circumstances surrounding the testimony of a given witness.

You may apply the tests of truthfulness I have mentioned, as well as any such tests you are accustomed to applying in your own daily lives, to weigh and determine the value and credibility of the statements made by each witness.

The testimony of a witness may be discredited or impeached in various ways, including by introducing contradictory evidence, by showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony.

If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

The fact that one party called more witnesses and introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering the most witnesses.  You are to judge the credibility of the witnesses and base your decision on the facts as you determine them from all the evidence.

AUTHORITY: Judge Gibney's Stock Civil Jury Instructions, Nos. 6, 7 (with modifications), and 8.

**INSTRUCTION NO. 7 – Depositions and Prior Testimony**

A deposition is a sworn statement made out of court but under oath. The testimony of a witness can be discredited or impeached by showing that a witness made statements earlier which are different or are inconsistent with what the witness testified to in court. Imagine I came to court and testified that a traffic light was red, but at some earlier time I was deposed or I wrote a letter, and I said the light was green. You can consider my previous statement that the light was green in evaluating whether you accept my testimony here in court that the light was red.

AUTHORITY: Final Jury Instruction No. 18 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne).

**INSTRUCTION NO. 8 – Opinion Evidence and Expert Witnesses**

The rules of evidence provide that if scientific, technical, or specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify and state his opinion concerning such matters.

Merely because such an expert witness has expressed an opinion does not mean, however, that you must accept this opinion. You should judge such testimony like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the soundness of the reasons given for the opinion, and all other evidence in the case.

AUTHORITY: Judge Gibney's Stock Civil Jury Instructions, No. 9.

**INSTRUCTION NO. 9 – Summary of the Issues**

I will now review for you the positions of the parties that you have to consider in reaching your verdict.  I will then provide you with detailed instructions on what each side must prove to prevail on each of its contentions.  At the start of this case, I advised you that this is a civil action for alleged patent infringement arising under the patent laws of the United States.

The parties in this case are:

The plaintiff, Limelight Networks, Inc., which I will refer to as Limelight; and

The defendant Akamai Technologies, Inc., which I will refer to as Akamai.

The patents at issue in this case are the following two United States Patents owned by Limelight: U.S. Patent Number 8,683,002 and U.S. Patent Number 9,015,348. You have heard the lawyers and witnesses in this case refer to these patents as the 002 patent and the 348 patent, respectively.  Together these patents may be referred to as "the Asserted Patents" or "Limelight Patents" or the "Patents-in-Suit."

Limelight contends that Akamai directly infringes any of the following claims of the Asserted Patents:

1.      claims 2 and 17 of the 002 patent; and

2.      claim 1 of the 348 patent.

Collectively I will refer to these patent claims as the Asserted Claims.

Akamai denies that it has infringed any of the Asserted Claims, and contends that the Asserted Claims are invalid.

It is your job to decide the following:

1.      Whether Limelight has proven by a preponderance of the evidence that Akamai has infringed any of the Asserted Claims;

11

Whether Akamai has proven by clear and convincing evidence that any of the Asserted Claims are invalid; and

If you find that any Asserted Claim is infringed and not invalid, what amount of damages Limelight has proven by a preponderance of the evidence.

AUTHORITY: Final Jury Instruction No. 22 in *Samsung Electronics Co., Ltd., v. NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications.

**INSTRUCTION NO. 10 – Claim Construction Generally**

Before you decide whether Akamai has infringed any of the Asserted Claims or whether any of Asserted Claims are invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are:

1.      claims 2 and 17 of the 002 patent; the claims of the 002 patent begin at column 10, line 16 of the 002 patent, which is Limelight trial exhibit LX0003 in evidence; and

2.      claim 1 of the 348 patent; the claims of the 348 patent begin at column 23, line 61 of the 348 patent, which is Limelight trial exhibit LX0005 in evidence.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  There can be several claims in a patent.  If a device or a method satisfies each of these requirements, then it is covered by the claim. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim by claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a method) meets each and every one of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or method where each of the claim elements or limitations is present in that product or method.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose. There are certain specific terms that I have defined, and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or method must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you

understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

The claims are intended to define, in words, the boundaries of the inventors' rights. Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually.  You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

AUTHORITY: Final Jury Instruction No. 23 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications including according to the Federal Circuit Bar Association Model Patent Jury Instructions (February 2016) (the "FCBA Instructions"), B2.2.

**INSTRUCTION NO. 11 – Claim Construction for the Case**

Before you decide whether any of the Asserted Patents have been infringed or whether the claims are invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs to be interpreted.  I have interpreted the meaning of some of the language in the Asserted Claims.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and validity are yours to make.

| Patent | Term | Court's Interpretation |
|---|---|---|
| 8,683,002 | "one or more neighboring servers" | "servers that are gathered in a particular group as neighbors" |
| 9,015,348 | "intermediate server" | "server, distinct from the edge server although potentially physically integrated, for identifying and/or implementing content acceleration techniques and communication with edge servers" |

You will find those definitions in your juror notebooks. For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

AUTHORITY: Final Jury Instruction No. 23 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications, including according to the Orders in this case, Dkts. 179, 548.

**INSTRUCTION NO. 12 – Person of Ordinary Skill in the Art**

During the course of the evidence, and in these instructions, you have heard the term "person of ordinary skill in the art." There are certain issues you must decide from the perspective of a person of ordinary skill in the art.

A person of ordinary skill in the art is a person with a level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention. A person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems. When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of (i) the level of education and experience of persons actively working in the field at the time of the invention; (ii) the types of problems encountered in the art at the time of the invention; and (iii) the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

The parties have agreed that a person of ordinary skill in the art of the asserted patents would have a Bachelor's Degree in Computer Science or Computer Engineering, or the equivalent, and one to two years of experience in the field of distributed systems, or Internet content delivery.

AUTHORITY: Final Jury Instruction No. 24 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications.

**INSTRUCTION NO. 13 – Infringement Generally**

I will now instruct you how to decide whether or not Limelight has met its burden of proving that Akamai has infringed the Asserted Patents.  Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Limelight alleges that the Akamai has infringed claims 2 and 17 of the 002 patent and claim 1 of the 348 patent.

The verdict form asks you to determine whether Limelight has shown by a preponderance of the evidence that Akamai has infringed any of the Asserted Claims of these patents. A preponderance of the evidence means it is more likely true than not that Akamai has infringed the asserted claims. In other words, the preponderance of the evidence means such evidence, when considered and compared with that opposed to it, produces in your minds belief that it is more likely true than not true that the Defendant has infringed the asserted claims.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim, but no infringement as to another.

To decide infringement, you will only compare Akamai's accused products and methods to the Asserted Claims.  In deciding the issue of infringement, you may not compare Akamai's accused products and methods to Limelight's products and methods.

I will now explain each of these types of infringement in more detail.

AUTHORITY: Final Jury Instruction No. 25 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications, including according to Judge Gibney's Stock Civil Jury Instructions regarding proof by a preponderance of the evidence.

18

**INSTRUCTION NO. 14 – Direct Infringement – Knowledge of the Patent and Intent to Infringe are Immaterial**

In this case, Limelight asserts that Akamai has directly infringed the asserted claims of the Limelight Patents.  Akamai is liable for directly infringing each asserted patent if you find that Limelight has proven that it is more likely than not that Akamai made, used, imported, offered to sell, or sold the invention defined in at least one asserted claim of each asserted patent in the United States.

**[Limelight proposes**:

Someone can directly infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent. They also may infringe a patent even though they believe in good faith that what they are doing does not infringe a patent or if they believe in good faith that the patent is invalid.**]**

**[Akamai proposes**:

Whether or not Akamai knew its products infringed or knew of Limelight's patents or products does not matter in determining direct infringement.**]**

AUTHORITY for Limelight's proposal: Final Jury Instruction No. 26 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne); 35 U.S.C. § 271(a); *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S. Ct. 1920 (2015); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 131 S. Ct. 2060, 2065 n.2 (2011); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs.* 859 F.2d 878, 889 (Fed. Cir. 1988).

AUTHORITY for Akamai's proposal: 35 U.S.C. § 271; Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); Seal-Flex, Inc. v. Athletic Track and Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999); Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993); N.D. Cal. Model Patent Jury Instruction B.3.2.

**INSTRUCTION NO. 15 – Literal Infringement – Types of Claims**

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." To determine literal infringement, you must compare the accused product or method with **[Limelight proposes**: each claim that Limelight asserts is infringed, using my instructions as to the meaning of the patent claims**] [Akamai proposes**: the patent claim**]** and determine whether each and every requirement of the claim is included in that product or method.

A patent claim is literally infringed only if the accused product or method includes each and every element or method step in that patent claim.

Some of the asserted claims are what are called "system" or "apparatus" claims. For these types of patent claims, a claim is literally infringed only if the accused Akamai product includes each and every element in that apparatus or system claim. If a given product does not contain one or more elements recited in a claim, that product does not literally infringe that claim. The asserted apparatus or system claims are claim 17 of the 002 patent and claim 1 of the 348 patent.

The remaining asserted claims are what are called "method" claims. These claims describe a series of steps, rather than components in a device. For these type of patent claims, a claim is literally infringed only if Akamai performs a method that includes all of the steps recited in that patent claim. If Akamai performs a method that does not include one or more steps recited in a claim, then it does not literally infringe that claim. The asserted method claim is claim 2 of the 002 patent.

You must determine literal infringement with respect to each patent claim individually.

**[Limelight proposes**:

The accused products and methods should be compared to the invention described in each patent claim it is alleged to infringe. The same element or method step of the accused product or method may satisfy more than one element of a claim.**]**

There are two different types of claims in the patent. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. Claim 1 of the 348 patent is an independent claim. An independent claim stands on its own for purposes of determining infringement.

A dependent claim refers to at least one other claim in the patent. For example, claim 2 of the 002 patent is a dependent claim that refers to claim 1 in that patent. A dependent claim includes all of the elements recited in the dependent claim (here, claim 2 of the 002 patent), as well as all of the elements of the independent claim to which the claim refers (here, claim 1 of the 002 patent). Claims 2 and 17 of the 002 patent are dependent claims.

To establish infringement of a dependent claim, Limelight must show that all elements of both the dependent claim and the independent claim on which it depends are met. So, for example, for claim 2 of the 002 patent, Limelight must show that it is more likely than not that Akamai uses a method that includes all limitations of both claims 1 and 2.

If you find that the independent claim from which a dependent claim depends is not infringed, then you must find that the dependent claim is also not infringed.

The preambles to the independent claims use the word "comprising." [**Limelight proposes**: This word has a special meaning in patents. We will look at the preamble to claim 15 of the 002 patent as an example. The preamble to that claim uses the phrase "a content distribution server . . . comprising…" where the word "comprising" means "including the following but not

22

excluding others." If you find that Akamai's accused products include all of the limitations in claim 15, you must find infringement of that claim. It does not matter that Akamai's accused product includes additional components.] [**Akamai proposes**: The word "comprising" means "including the following but not excluding others."]  The fact that a particular accused product or method also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

AUTHORITY: Final Jury Instruction No. 27 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications, including according to the AIPLA Instructions, Section V, § 3.2.

**INSTRUCTION NO. 16 – Literal Infringement – Infringement under the Doctrine of Equivalents**

If you decide that Akamai's accused product does not literally infringe claim 1 of the 348 patent, you must then decide whether the accused products infringe claim 1 of the 348 patent under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, a product or method can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. If the accused product is missing a part that is identical or equivalent to even one requirement of the asserted patent claim, the accused product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the accused product has a part that is identical or equivalent to that individual claim requirement.

The doctrine of equivalents can also apply to method claims.  For method claims, the method can infringe an asserted patent claim if it includes steps that are equivalent to those elements of the claim that are not literally present in the method. If the method is missing an equivalent step to even one step of the asserted patent claim, the method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the method has an equivalent step to the individual claim element(s) that is not literally present in the method.

An equivalent of an element is a part or step that is insubstantially different from the claimed element. One way of showing that a part or step is insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element recited in the patent claim.

In deciding whether the accused product component or method step is insubstantially different from a claim element, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the accused device part or method step with the claim requirement. However, the known interchangeability between the accused device part or method step and the claim element is not necessary to find infringement under the doctrine of equivalents.

Further, the same part or step of the accused product or method may satisfy more than one element of a claim. If you find that all of the remaining elements of the claim are present in the accused product or method and, further, that these differences are insubstantial, you may find infringement under the doctrine of equivalents.

Further, two parts or steps of the accused product or method may satisfy a single claim element. If you find that all of the remaining elements of the claim are present in the accused product or method and, further, that these differences are insubstantial, you may find infringement under the doctrine of equivalents.

[**Akamai proposes**: You may not determine that an alternative aspect of a product or method is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.]

AUTHORITY: the AIPLA Instructions, Section V, § 3.6, with modifications, [for Akamai's proposal: including according to the FCBA Instructions, B.3.1.d].

**INSTRUCTION NO. 17 – Invalidity – Summary of Invalidity Defenses**

I will now instruct you on the rules you must follow in deciding whether or not [**Limelight proposes**: Akamai has met its burden of proving that any of] the Asserted Claims of Limelight's patents are invalid.

[**Limelight proposes**: Akamai contends that the asserted claims of the Limelight Patents are invalid. A patent is presumed to be valid and, therefore, Akamai must prove by what is known as clear and convincing evidence that a claim is invalid.  Clear and convincing evidence requires that Akamai prove that it is highly probable that each asserted claim is invalid.]

[**Akamai proposes**: Proof that any claim of a patent is invalid requires clear and convincing evidence, that is you must be left with a clear conviction that the claim is invalid.]

Akamai contends that all of the Asserted Claims are invalid for one or more of the following reasons:

1.      The asserted claims of [**Limelight proposes**: the 002 patent is] [**Akamai proposes**: the 002 and 348 patents are] anticipated by a single prior art reference.

2.      The asserted claims of the 002 and 348 patents are anticipated by Akamai's alleged prior art system.

3.      The asserted claims of the 002 and 348 patents are obvious in light of [**Akamai proposes**: the prior art] [**Limelight proposes**: a single prior art reference and/or the specific combination of the prior art references].

4.      The asserted claims of the 002 and 348 patents are obvious in light of Akamai's alleged prior art system.

I will now explain each of these invalidity defenses to you.

<u>AUTHORITY</u>: Final Jury Instruction No. 28 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications, including according to the FCBA Instruction, B.4.1.

**INSTRUCTION NO. 18 – Invalidity – Prior Art to the 002 Patent**

Prior art may include items that were publicly known or that have been used or offered for sale, or publications or patents that disclose the claimed invention or elements of the claimed invention.  For the asserted claims of the 002 patent, Akamai contends that prior art to the 002 patent includes the following items received into evidence during trial:

[**Limelight proposes**[1]:

1.      U.S. Patent 7,133,905 ("Dilley");

2.      Internet Cache Protocol, RFC2187 ("RFC2187); and

3.      Akamai's alleged prior art system as it existed prior to October 2, 2008, that did not include "Ping Likely Peers."]

[**Akamai proposes**:

1.      any product or method that was publicly known or used by others in the United States before the patented invention was invented or the effective filing date of the patent;

2.      any product or method that was in public use or on sale in the United States more than one year before the patented invention was invented and the effective filing date of the patent];

3.      patents that issued anywhere in the world more than one year before the patented invention was invented and the effective filing date of the patent;

4.      publications anywhere in the world having a date more than one year before the patented invention was invented and the effective filing date of the patent;

---

[1] **Limelight opposes** any reliance by Akamai on its alleged prior use system as prior art and therefore opposes including any reference to the same in these instructions. Limelight includes its counterproposals relating to Akamai's alleged prior art systems in these instructions only to the extent the Court decides that Akamai is allowed to present these issues to the jury.

5.     U.S. patent applications, which were published or patented and were filed by another inventor before the patented invention was invented and the effective filing date of the patent.

In this case, the parties dispute the date of invention and the effective filing date for the 002 patent.  Limelight contends that the date of invention and effective filing date is October 2, 2009.  Akamai contends that the date of invention and effective filing date for the 002 patent is March 26, 2010.**]**

AUTHORITY: Final Jury Instruction No. 29 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications, including according to the FCBA Instruction, B.4.3a-1 [for Akamai's proposal: and *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir. 2013); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015); *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002); 35 U.S.C. § 119(e)(1)].

**INSTRUCTION NO. 19 – Invalidity – Effective Filing Date of 002 Patent[2]**

**[Akamai proposes:**

The parties dispute the date of invention and the effective filing date, or what is also referred to as the priority date, for the asserted claims of the 002 patent. Limelight filed a "provisional" patent application on October 2, 2009. The number of that provisional application is 61/248,378. You must determine whether one or more of the asserted claims of the 002 patent are sufficiently supported by the provisional application. Limelight contends that the asserted claims of the 002 patent are entitled to the filing date of the provisional application, while Akamai contends that the asserted claims are not. Instead, Akamai contends that the 002 patent should have a priority date of March 26, 2010, the date that the first parent application of the 002 patent's application was filed.

You must decide to which priority date you believe Limelight's patent claims are entitled. To do so, you must decide whether the disclosure of the provisional application reasonably conveys to one of ordinary skill in the field of technology of the 002 patent that the inventor had possession of the invention claimed in the 002 patent at the time of filing the provisional application.

For each of claims 2 and 17 of the 002 patent, Limelight may only rely on the filing date of the provisional application to establish the priority date if it proves that the provisional application describes the claimed invention, and does so in sufficient detail so that one skilled in the art can conclude that the inventor invented the claimed invention as of the filing date sought. Adequate detail requires more than a generic statement of an invention's boundaries. The provisional application must disclose all of the limitations of claim 2 (including the limitations of

---

[2] **Limelight objects** to the inclusion of this instruction.

independent claim 1) and claim 17 (including the limitations of independent claim 15) of the 002 patent in order for the 002 patent to have a priority date of October 2, 2009 with respect to that claim.  The fact that the provisional application is shown on the front of the 002 patent does not mean that the 002 patent is entitled to the filing date of the provisional patent.  Instead, you must decide whether the provisional application discloses each and every limitation of claim 2 (including the limitations of independent claim 1) and claim 17 (including the limitations of independent claim 15) of the 002 patent.

Limelight bears the burden of producing evidence that the 002 patent is entitled to a priority date of October 2, 2009.]

AUTHORITY for Akamai's proposal: *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1349 (Fed. Cir. 2010); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2001); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 08-cv-04990 (N.D. Cal. July 6, 2012); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir. 2013); *Textscape, LLC v. Adobe Sys., Inc.*, 2010 WL 2293266, at *2 (N.D. Cal. 2010); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015); *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002); 35 U.S.C. § 119(e)(1).

**INSTRUCTION NO. 20 – Invalidity – Prior Art for the 348 Patent**

The parties agree that the effective filing date of the 348 patent is July 19, 2013.

For the asserted claims of the 348 patent, [**Limelight proposes**: Akamai contends that prior art includes the following items received into evidence during trial] [**Akamai proposes**: prior art includes any of the following items that were received in evidence during trial]:

    1.      [**Limelight proposes**[3]: U.S. Patent Application Publication No. 2013/0166634 A1 ("Holland");

    2.      Akamai's alleged prior art system as it existed prior to July 19, 2013.]

[**Akamai proposes**:

    1.      Items that were publicly known, in public use, on sale, or otherwise available to the public before the effective filing date of the patent,

    2.      Patents, public patent applications, or publications that were issued before the effective filing date of the patent, and

Patents and published patent applications naming another inventor that were filed before the effective filing date of the patent.]

AUTHORITY: Final Jury Instruction No. 29 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications, including according to the FCBA Instruction, B.4.3a-1.

---

[3] **Limelight opposes** any reliance by Akamai on its alleged prior use system as prior art and therefore opposes including any reference to the same in these instructions. Limelight includes its counterproposals relating to Akamai's alleged prior art systems in these instructions only to the extent the Court decides that Akamai is allowed to present these issues to the jury.

**INSTRUCTION NO. 21 – Invalidity – Anticipation**

The first type of invalidity defense you will consider is anticipation.

A person cannot obtain a patent claim if **[Akamai proposes**: the claimed invention is not new**] [Limelight proposes:** someone else already has made an identical invention**]**. An invention that is not new is said to be "anticipated by prior art." To prove anticipation, the Akamai must prove by clear and convincing evidence that the claimed inventions are not new.

In this case, Akamai contends that each of the asserted claims of the Limelight Patents is anticipated.

**[Limelight proposes**:

In this case, the Defendant alleges anticipation as follows:

1.      Akamai alleges that the asserted claims of the 002 patent are anticipated by U.S. Patent No. 7,133,905 ("Dilley"), or Akamai's alleged prior art system as it existed prior to October 2, 2008, that did not include "Ping Likely Peers."

2.      Akamai alleges that the asserted claim of the 348 patent is anticipated by Akamai's alleged prior art system.**]**

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same ways as recited in the claim limitation. Anticipation cannot be established by combining two or more items of prior art. In determining whether every one of the elements of the claimed invention is found in the alleged prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular alleged prior art reference.

**[Akamai proposes**: Additionally, a prior art reference may "incorporate by reference" another patent or publication.  In this case, the "incorporated" patent or publication is considered to be part of the prior art reference as if all of the information in the "incorporated" patent or

33

publication was expressly disclosed in the prior art references itself.  In other words, the prior art reference and the "incorporated" patent or publication are considered to be a single prior art reference.  Therefore, if the prior art reference and the "incorporated" patent or publication collectively disclose each and every element in the claim, the prior art reference anticipates the claim.][4]

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are some additional requirements that apply to the particular categories of anticipation that Akamai contends apply in this case. I will now instruct you about these.

AUTHORITY: Final Jury Instruction No. 30 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications, including according to the AIPLA Instructions, Section V, 6.0, with modifications; Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377, 1379 (Fed. Cir. 2003); Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1269 (Fed. Cir. 1991).

---

[4] **Limelight objects** to the inclusion of this instruction.

**INSTRUCTION NO. 22 – Invalidity – Anticipation – Prior Public Use for the 002 Patent**

**[Limelight proposes**:

Akamai contends that the asserted claims of 002 patent are anticipated because the inventions defined in the asserted claims were publicly used in the United States prior to October 2, 2008, in Akamai's alleged prior art system that did not include "Ping Likely Peers."

For the 002 patent, a claim is invalid if prior to October 2, 2008, an embodiment of the claimed invention was both:

1.      accessible to the public or commercially exploited in the United States; and

2.      ready for patenting.

An invention was in public use if the claimed invention was accessible to the public or commercially exploited. Factors relevant to determining whether a use was public include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention. An invention is not in public use if certain aspects of a prior art system that are not covered by the invention are accessible to the public but the public has not been informed of, and cannot readily discern key aspects that are covered by the invention and the claims.

In order to be a public use, the invention also must have been ready for patenting at the time of the alleged public use. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention

sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been: (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

Akamai also contends that claims 2 and 17 of the 002 patent were anticipated because the invention defined in the claims was embodied by Akamai's alleged prior use system as it existed prior to October 2, 2008, which did not have "Ping Likely Peers," that Akamai alleges was on sale in the United States prior to October 2, 2008. This requires that prior to that date an embodiment of the claimed invention was both: (1) the subject of a commercial offer for sale in the United States; and (2) ready for patenting.

A commercial "offer for sale" was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an "offer for sale" if the claimed invention was embodied in an item that was actually sold or offered for sale. It is not required that a sale was actually made. The essential question is whether there was an attempt to obtain a commercial benefit from the invention.

However, when a third party uses a secret, unpatented method to produce and sell goods or services, this activity will not create a bar preventing a different inventor from later patenting the same method, if the goods or services sold do not reveal the underlying method.

With respect to the date, the parties do not dispute that Akamai was using its alleged prior-art system, which did not have "Ping Likely Peers," prior to October 2, 2008. However, Limelight disputes that the alleged prior art system anticipates its asserted claims.]

[**Akamai proposes**: Akamai contends that the asserted claims of 002 patent are invalid based on the prior public use of the Akamai prior art system.

Specifically, Akamai contends that the asserted claims of the 002 patent are anticipated by Akamai's prior art system because it was an embodiment of the claimed invention and satisfied at least one of the following requirements:

1.      Akamai's prior art system was publicly known or used in the U.S. before the invention of the 002 patent;

2.      Akamai's prior art system was publicly known or used in the U.S. more than one year before the effective filing date of the 002 patent;

3.      Akamai's prior art system was on sale in the U.S. more than one year before the effective filing date of the 002 patent; or

4.      Akamai's prior art system was offered for sale in the U.S. and was ready for patenting more than one year before the effective filing date of the 002 patent.

A patent claim is invalid based on a public use or public knowledge if at least one of the following are true:

1.      More than one year prior to the effective filing date of a patent, an embodiment of the claimed invention was publicly accessible or used in the United States; or

2.      Any time before the date of the invention, an embodiment of the claimed invention was publicly accessible or used by anyone other than Limelight in the United States.

A claimed invention was publicly known or in public use if it was known or used by a person who was not under limitation, restriction, or obligation of secrecy to the inventor.  The absence of affirmative steps to conceal the use of the invention is evidence of a public use.

A "public use" of a prior art system does not need to involve a disclosure of the system's confidential inner workings.  Instead, all that is required is the public use of a device, system, or method that embodied the invention.

A patent claim is invalid based on a prior sale if, more than one year prior to the effective filing date of a patent, an embodiment of the claimed invention was commercially exploited in the United States.

A patent claim is invalid based on a prior offer for sale if, more than one year prior to the effective filing date of a patent, an embodiment of the claimed invention was offered for sale and was ready for patenting.]

AUTHORITY for Limelight's proposal: the AIPLA Instruction, Section V, 6.2.1; 35 U.S.C. § 102(a), (b) (pre-AIA); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.,* No. 14-cv-00876-RS (JSC), 2016 U.S. Dist. LEXIS 72217, at *13-14 (N.D. Cal. May 23, 2016); *TQP Dev., LLC v. Intuit Inc.,* No. 2:12-CV-180-WCB, 2014 U.S. Dist. LEXIS 84054, at *21-22 (E.D. Tex. June 20, 2014); *Dey, L.P. v. Sunovion Pharms., Inc.,* 715 F.3d 1351, 1357 (Fed. Cir. 2013); *Delano Farms Co. v. Cal. Table Grape Comm'n,* 778 F.3d 1243, 1247, 1249-50 (Fed. Cir. 2015) (citing *Dey*); *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.,* 855 F.3d 1356, 1368 (Fed. Cir. 2017); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1550 (Fed. Cir. 1983) (Markey, C.J.), *abrogated in part on other grounds by Robert Bosch, LLC v. Pylong Mfg. Corp.,* 659 F.3d 1142 (Fed. Cir. 2011); *Cave Consulting Grp., LLC v. OptumInsight, Inc.,* No. 5:11-cv-00469, 2015 U.S. Dist. LEXIS 21514 at *17 (N.D. Cal. Feb. 20, 2015); *In re Caveney,* 761 F.2d 671, 675 (Fed. Cir. 1985) (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540 (Fed. Cir. 1983) and *D.L. Auld Co, v. Chroma Graphics Corp.,* 714 F.2d 1144 (Fed. Cir. 1983); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540 (Fed. Cir. 1983) (Markey, C.J.), *abrogated in part on other grounds by Robert Bosch, LLC v. Pylong Mfg. Corp.,* 659 F.3d 1142 (Fed. Cir. 2011); *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 66-68, 48 USPQ2d 1641, 1647 (1998).

AUTHORITY for Akamai's proposal: the AIPLA Instruction, Section V, 6.2.1; 35 U.S.C. §

102(a), (b) (pre-AIA); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997);

*Zenith Elecs. Corp. v. PDI Commc'n Sys.*, 522 F.3d 1348, 1356 (Fed. Cir. 2008).

**INSTRUCTION NO. 23 – Invalidity – Anticipation – Prior Public Use for the 348 Patent**

**[Limelight proposes:**

You are instructed that the 348 patent has an effective filing date of July 19, 2013.

Akamai contends that claim 1 of the 348 patent is anticipated because the invention defined in claim 1 was publicly used in Akamai's alleged prior art system before July 19, 2013.

For the 348 patent, a patent claim is invalid for prior public use if before July 19, 2013, an embodiment of the claimed invention was both:

    1.     accessible to the public or commercially exploited anywhere in the world; and

    2.     ready for patenting.

Akamai also contends that claim 1 of the 348 patent was anticipated because the invention defined in that claim was embodied by Akamai's alleged prior use system as it existed prior to July 19, 2013, that Akamai alleges was on sale before July 19, 2013.

This requires that prior to that date an embodiment of the claimed invention was both: (1) the subject of a commercial offer for sale in the United States; and (2) ready for patenting.

A commercial "offer for sale" was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an "offer for sale" if the claimed invention was embodied in an item that was actually sold or offered for sale. It is not required that a sale was actually made. The essential question is whether there was an attempt to obtain a commercial benefit from the invention.

However, when a third party uses a secret, unpatented method to produce and sell goods or services, this activity will not create a bar preventing a different inventor from later patenting the same method, if the goods or services sold do not reveal the underlying method. You should apply the same standards that I gave to you on the requirements for prior public use and prior sales

of the 002 patent to determine whether the 348 invention was in public use or on sale before July 19, 2013.]

[**Akamai proposes**:

Akamai also contends that claim 1 of the 348 patent is anticipated because Akamai's prior art system disclosed the invention defined by claim 1 and was publicly known, in public use, on sale, or offered before the effective filing date of the claimed invention.

You are instructed that the 348 patent has an effective filing date of July 19, 2013.

A patent claim is invalid if the claimed invention was in public use, on sale, or otherwise available to the public before the effective filing date of the 348 patent. A patent claim is invalid if the claimed invention was offered for sale to the public before the effective filing date of the 348 patent and if the claimed invention was ready for patenting.

You should apply the same standards that I gave to you for the 002 patent to determine whether the 348 patent's alleged invention was publicly known, in public use, or offered for sale.]

AUTHORITY for Limelight's proposal: the AIPLA Instruction, Section V, 6.2.2; 35 U.S.C. § 102(a)(2) (post-AIA); *Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.,* No. CV 14-01918 JVS (JCGx), 2014 U.S. Dist. LEXIS 197546, at *10 n.5 (C.D. Cal. Dec. 22, 2014); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.,* No. 14-cv-00876-RS (JSC), 2016 U.S. Dist. LEXIS 72217, at *13-14 (N.D. Cal. May 23, 2016); *TQP Dev., LLC v. Intuit Inc.,* No. 2:12-CV-180-WCB, 2014 U.S. Dist. LEXIS 84054, at *21-22 (E.D. Tex. June 20, 2014); *Dey, L.P. v. Sunovion Pharms., Inc.,* 715 F.3d 1351, 1357 (Fed. Cir. 2013); *Delano Farms Co. v. Cal. Table Grape Comm'n,* 778 F.3d 1243, 1247, 1249-50 (Fed. Cir. 2015) (citing *Dey*); *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.,* 855 F.3d 1356, 1368 (Fed. Cir. 2017); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1550 (Fed. Cir. 1983) (Markey, C.J.), *abrogated in part on other*

*grounds by Robert Bosch, LLC v. Pylong Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011); *Pfaff v.*

*Wells Elecs., Inc.*, 525 U.S. 55, 66-68, 48 USPQ2d 1641, 1647 (1998).

AUTHORITY for Akamai's proposal: the AIPLA Instruction, Section V, 6.2.1; 35 U.S.C. §

102(a), (b); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1570 (Fed. Cir. 1997); Zenith Elecs.

Corp. v. PDI Commc'n Sys., 522 F.3d 1348, 1356 (Fed. Cir. 2008).

**INSTRUCTION NO. 24 – Defense of Noninfringement Based on Prior Commercial Use for the 002 Patent**

[**Limelight opposes** this instruction.

To the extent the Court decides that Akamai is allowed to present this issue and submits this issue to the jury, **Limelight proposes** the following jury instructions:

Akamai contends that it does not infringe the asserted claims of the 002 patent because of its prior commercial use of the same inventions claimed in these claims. Such prior use, if proved, can be a defense to infringement. Akamai bears the burden to prove this defense by clear and convincing evidence.

To prove that it is not liable for infringing the asserted claims of the 002 patent, Akamai must show by clear and convincing evidence that, acting in good faith, it commercially used the same product as that accused of infringement by Limelight in the United States, either in connection with an internal commercial use or an actual arm's length sale or other arm's length commercial transfer of a useful end result of such commercial use; and such commercial use occurred at least 1 year before October 2, 2009.

Akamai must prove by clear and convincing evidence that the product that was allegedly in prior commercial use would otherwise infringe the asserted claims absent this defense. In other words, Akamai must prove by clear and convincing evidence that the alleged prior art system meets the asserted claims at issue and is the same system accused of infringement in this case.

The fact that Akamai raises this defense or Akamai has established this defense, if you determine so, does not mean claims 2 and 17 of the 002 patent are invalid. You should determine invalidity of claims 2 and 17 of the 002 patent separately as I explained before.]

[**Akamai proposes**:

If you determine that Akamai infringes claims 2 and 17 of the 002 patent, Akamai may still be entitled to practice the subject matter of claims 2 and 17 if it proves certain things. Akamai is entitled to practice the subject matter of claims 2 and 17 of the 002 patent, and you should not award any damages against Akamai, if Akamai proves the following two items by clear and convincing evidence:

1.      Akamai commercially used the subject matter of claims 2 and 17 of the 002 patent in the United States; and

2.      Akamai's commercial use occurred at least one year before the effective filing date of the 002 patent.

Commercial use of the subject matter of a claimed invention includes both internal commercial use as well as an actual arm's length sale or transfer of a product embodying the claimed invention.]

AUTHORITY for Limelight's proposal: 35 U.S.C. § 273 (post-AIA); *Vaughan Co. v. Glob. Bio-Fuels Tech., LLC*, No. 1:12-CV-1292, 2013 U.S. Dist. LEXIS 152068 (N.D.N.Y. Oct. 23, 2013).

AUTHORITY for Akamai's proposal:  35 U.S.C. § 273; 35 U.S.C. § 282.

**INSTRUCTION NO.  25 – Invalidity – Obviousness**

Even though an invention may not have been identically disclosed or described in a single prior art reference, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent.

Akamai also contends that all the asserted claims of the Limelight Patents are invalid because the claimed inventions are "obvious."

Akamai may establish that a patent claim is invalid by showing, by clear and convincing evidence that the claimed invention would have been obvious to a person having ordinary skill in the art.  [**Limelight proposes**: Akamai contends that claims 2 and 17 of Limelight's 002 patent would have been obvious in October 2009 based separately on:

1.       U.S. Patent No. 7,133,905 ("Dilley");

2.       Dilley in combination with Internet Cache Protocol, RFC2187 ("RFC2187); and

3.       Akamai's alleged prior art system as it existed prior to October 2, 2008, that did not include "Ping Likely Peers."

Limelight agrees that Dilley, RFC2187, and Akamai's pre-October 2, 2008 system that did not include "Ping Likely Peers" are prior art to the 002 patent, but Limelight disputes that any of these items would make claims 2 or 17 of the 002 patent obvious.

Akamai also contends that claim 1 of the 348 patent would have been obvious in July 2013 based separately on (1) U.S. Patent Publication No. 2913/0166634 ("Holland") or (2) Akamai's alleged prior art system as it existed prior to July 19, 2013.]

[**Akamai proposes**:  The relevant time to determine obviousness was the effective filing date of each Limelight Patent, which is March 26, 2010 for the 002 patent, and July 19, 2013 for the 348 patent].

45

Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more items of prior art.

In determining whether a claimed invention is obvious, you must consider the following factors.  First, you must consider the scope and content of the prior art relied upon by the Akamai.  Second, you must determine the difference or differences, if any, between each asserted claim that Akamai contends is obvious and the prior art on which Akamai relies.  Third, you must consider the level of ordinary skill in the art at the time [**Limelight proposes**: of October 2, 2009 for the 002 patent and July 19, 2013 for the 348 patent] [**Akamai proposes**: of each Limelight Patent, which is March 26, 2010 for the 002 patent and July 19, 2013 for the 348 patent].

In making your assessment of obviousness, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether the claimed invention was obvious or not, such as:

1.      Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than due to advertising, promotion, salesmanship, or features of the product other than those allegedly found in the claim);

2.      Whether the invention satisfied a long-felt need;

3.      Whether others had tried and failed to make the invention;

4.      Whether others invented the invention at roughly the same time;

5.      Whether others copied the invention;

6.      Whether there were changes or related technologies or market needs contemporaneous with the invention;

7.      Whether the invention achieved unexpected results;

8.      Whether others in the field praised the invention;

9.      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

10.      Whether others sought or obtained rights to the patent from the patent holder; and Whether the inventor proceeded contrary to accepted wisdom in the field.

**[Akamai proposes**:

Some of these factors weigh in favor of obviousness and others weigh against a finding of obviousness.  For example, evidence of simultaneous invention can be evidence of obviousness.

For objective evidence of secondary considerations to be accorded substantial weight, Limelight must establish a nexus between the evidence and the merits of the claimed invention. Limelight therefore bears the burden of establishing a nexus between the patented invention and any evidence of commercial success or other secondary considerations.  Commercial success is only relevant to obviousness considerations if there is proof that the success was a direct result of the unique characteristics of the claimed invention.  If the patented invention is only a component of a commercially successful machine or process, the patent holder must show a nexus between the patented feature and the commercial success.  If the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant.  So too if the feature that creates the commercial success was known in the prior art, the success is not pertinent.**]**

**[Limelight proposes**:

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. Answering all, or some, of these questions "no" may suggest that the claims would have been obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claims. Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other

evidence in the case in determining whether Akamai has proven that the claimed invention would have been obvious.]

In deciding obviousness, you must consider each claim separately. You must also avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time the inventions were made (for the 002 patent) or the effective filing date (for the 348 patent).

**[Limelight proposes**:

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may, but are not required, to find obviousness if you find that as of October 2, 2009 for the 002 patent and as of July 19, 2013, for the 348 patent, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art

provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.**]**

AUTHORITY: the FCBA Instruction, B.4.3.c; the AIPLA Instruction, Section V, 7.0.1, 7.0.2; [for Akamai's proposal: *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018); *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1372 (Fed. Cir. 2010); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006); *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563 (Fed. Cir. 1997).]

**INSTRUCTION NO. 26 – Damages – Generally**

If you find that the accused products infringe any of the asserted claims of the Limelight Patents, and that those claims are not invalid, you must determine the amount of damages to be awarded to Limelight for the infringement. On the other hand, if you find that each of the asserted claims is either not infringed or invalid, then you should not consider damages in your deliberations.

In this case, Limelight seeks two types of damages: lost profits and a reasonable royalty. Limelight seeks lost profits for the 002 patent.  Limelight seeks a reasonable royalty for the 348 patent.

[**Limelight proposes**:

Limelight has the burden to establish the amount of its damages by a preponderance of the evidence. While Limelight is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Any doubts regarding the amount of the damages should be resolved against the Defendant.]

[**Akamai proposes**:

Limelight must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.]

If proven by Limelight, damages must be in an amount adequate to compensate Limelight for the infringement. The purpose of a damage award is to put Limelight in about the same financial position it would have been in if the infringement had not happened. You may not add anything to the amount of damages to punish an accused infringer or to set an example.  You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that I believe that one party or the other should win in this case.  My instructions about damages are for your guidance only in

the event you find in favor of Limelight. You will need to decide the issue of damages only if you find that one or more of the asserted claims is both infringed and not invalid.

AUTHORITY: [**for Limelight's proposal**: Final Jury Instruction No. 46 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications including according to the FCBA Instruction B.6.1; *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983)]; [**for Akamai proposal**: AIPLA Model Instruction 11.0 with modifications; the FCBA Instruction B.6.1; *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009); 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).]

**INSTRUCTION NO. 27 – Damages – Date Damages Begin[5]**

[**Akamai proposes**:

The earliest date from which you can begin to calculate damages for any asserted claims of the 002 patent is November 30, 2015, the date on which Limelight filed its complaint.]

AUTHORITY: 35 U.S.C. § 287(a); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-1539 (Fed. Cir. 1993); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998); *Northbrook Digital Corp. v. Browster, Inc.*, 2008 WL 4104695, at *3-4 (D. Minn. Aug. 26, 2008); *Soverain Software LLC v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 909 (E.D. Tex. 2005); *IMX, Inc. v. Lendingtree, LLC*, 2005 WL 3465555, at *2, 4 (D. Del. Dec. 14, 2005).]

---

[5] **Akamai submits** this proposed instruction to preserve its appellate rights but recognizes that the Court has already held that "Limelight did not need to mark its products and, therefore, may seek pre-suit damages." Dkt. 419 at 9; Dkt. 418 ("Limelight may obtain pre-suit damages"). **Limelight opposes** this jury instruction.

**INSTRUCTION NO. 28 – Damages – Date Damages Begin**

The earliest date from which you can begin to calculate damages for all asserted claims of the 002 patent is March 25, 2014, the date when the 002 patent was issued.  The earliest date from which you can begin to calculate damages for the asserted claim of the 348 patent is April 21, 2015, the date when the 348 patent was issued.

AUTHORITY: the FCBA Instructions, 6.8, with modifications.

53

**INSTRUCTION NO. 29 – Lost Profits – Generally**

[**Limelight proposes**:

For the 002 patent, Limelight seeks to recover lost profits for some of Akamai's sales of the infringing products.

To recover lost profits, Limelight must show a reasonable probability that but for the infringement, it would have made the sales that were made by the infringer. In other words, Limelight must show that, but for the infringement, there is a reasonable probability that Limelight would have earned higher profits. To show this, Limelight must prove that, if there had been no infringement, it would have made some portion of the sales that Akamai made of the infringing product.

Limelight is entitled to lost profits if it establishes each of the following:

(1) That there was a demand for the patented product.

(2) That there were no available, acceptable, noninfringing substitute products, or, if there were, Limelight's market share of the number of the sales made by Akamai that Limelight would have made, despite the availability of other acceptable noninfringing substitutes.

(3) That Limelight had the manufacturing and marketing capacity to make any infringing sales actually made by Akamai and for which Limelight seeks an award of lost profits—in other words, that Limelight was capable of satisfying the demand.

(4) The amount of profit that Limelight would have made if Akamai had not infringed.

If you find that Limelight has proved each factor by a preponderance of evidence, Limelight is entitled to the damages of the full amount of the proven lost profits.]

[**Akamai proposes**:

For the 002 patent, Limelight is seeking lost profits damages.  To prove lost profits, Limelight must show that, but for Akamai's alleged infringement, Limelight would have made

additional profits through the sale of a portion of the sales of the allegedly infringing products made by Akamai.  Limelight must prove this by a preponderance of the evidence, more likely than not.  Part of your job is to determine what the customer who purchased the allegedly infringing products from Akamai would have done if the alleged infringement had not occurred.  It is important to remember that the profits I have been referring to are the profits allegedly lost by Limelight, not the profits, if any, made by Akamai on the allegedly infringing sales.

In order to recover lost profits, Limelight must show a reasonable probability that, but for the alleged infringement, it would have made the sales that were made by Akamai.

Limelight has proven its lost profits if you find that Limelight has proven each of the following factors by the more likely than not standard:

1.      That there was demand for the patented product.

2.      That there were no acceptable, noninfringing substitutes.

3.      That Limelight had the manufacturing and marketing ability to make a part of the infringing sales actually made by Akamai.

4.      The amount of profit that Limelight would have made if it were not for Akamai's alleged infringement.]

I will now explain each of these factors.

AUTHORITY for Limelight's proposal: the FCBA Instructions, B.6.2; *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1290 (Fed. Cir. 2017); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1243-44 (Fed. Cir. 2017); Dkt. 559 at 9.

AUTHORITY for Akamai's proposal: AIPLA Model Instructions 11.2.1.1 and 11.2.1.2 with modifications; Dkt. 559 at 9 (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Micro*

*Chem. v. Lextron, Inc.*, 318 F.3d 1119, 1122-25 (Fed. Cir. 2003); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).

**INSTRUCTION NO. 30 – Lost Profits – Panduit Factors – Demand[6]**

[**Akamai proposes**:

The first factor asks whether there was demand for the patented product in the relevant market.  To satisfy this factor, Limelight must prove that the features accused of infringement drove demand for Akamai's allegedly infringing products.  In other words, Limelight can only recover lost profits for Akamai's allegedly infringing sales if the allegedly infringing feature drove the customers' purchasing decisions, so that Limelight itself would have made those sales "but for" the use of the allegedly infringing feature.]

AUTHORITY: *Mentor Graphics Corp. v. EVE-USA, Inc.* 851 F.3d 1275, 1289 (Fed. Cir. 2017); *Rolls-Royce PLC v. United Techs. Corp.*, No. 10-457, 2011 WL 1740143, at *6-7 (E.D. Va. May 4, 2011).

---

[6] **Akamai submits** this proposed instruction to preserve its appellate rights but recognizes that the Court has already decided that Dr. Prowse "need not specifically show that the patented features drove demand for the accused products."  Dkt. 559 at 10. **Limelight opposes** this jury instruction.

**INSTRUCTION NO. 31 – Lost Profits – Panduit Factors – Demand**

[**Limelight proposes**:

Demand for the patented product can be proven by significant sales of Limelight's patented product or significant sales of Akamai's infringing product containing the patented features.]

[**Akamai proposes**:

The first factor asks whether there was demand for the patented product in the relevant market. The only sales for which Limelight can obtain lost profits are the customers who would refuse to purchase the accused products without the patented features. Limelight can prove demand for the patented product by showing significant sales of Limelight's own patented product. Limelight also can prove demand for the patented product by showing significant sales of Akamai's products that are covered by the 002 patent. To use sales of Akamai's products as proof of this demand, however, Limelight's and Akamai's products must be sufficiently similar to compete against each other in the same market or market segment. Limelight also must show that Akamai could not sell its products without Limelight's patented features. You should not consider sales of products mainly due to advertising and marketing, and unpatented features of the products as evidence of demand for the patented product. If sales of a complex product are driven by a plethora of features, rather than just the infringing feature, then lost profits are not available.]

AUTHORITY for Limelight's proposal: the FCBA Instructions, B.6.2.; *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1290 (Fed. Cir. 2017); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1242 (Fed. Cir. 2017) (quoting *Depuy*).

AUTHORITY for Akamai's proposal: AIPLA Model Instruction 11.2.1.3 with modifications; Dkt. 559 at 10; *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1289, 1290 (Fed. Cir.

2017); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

**INSTRUCTION NO. 32 – Lost Profits – Noninfringing Substitutes – Acceptability**

**[Limelight proposes**:

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased Akamai's product. If purchasers of Akamai's product were motivated to buy that product because of features available only from that product and Limelight's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with Limelight's and Akamai's products. On the other hand, if the realities of the marketplace are that competitors other than the Limelight would likely have captured the sales made by Akamai, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.]

**[Akamai proposes:**

The second factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention.  The only sales for which Limelight can obtain lost profits are the sales to customers who would refuse to purchase the accused products without the patented feature. If there is a non-infringing alternative that any given purchaser would have found acceptable and bought, then Limelight cannot obtain lost profits for that particular sale. For example, if a customer would have bought the accused product without the patented feature or with a different, non-infringing alternative to the patented feature, then Limelight cannot establish entitled to lost profits for that particular sale.

To be an acceptable substitute, the products must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. In other words, to recover lost profits, Limelight must show that the customer would not have purchased the accused product without the infringing feature. The acceptable substitutes also must not infringe the patent because they were licensed under the patent or they

did not include all the features required by the patent.  The acceptable substitutes, in addition, must have been available during the damages period.  An acceptable non-infringing substitute is available if, during the damages period, a competitor or Akamai had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable non-infringing substitute. The substitute need not have actually been sold at that time. If you determine that some of Akamai's customers would just as likely have purchased a non-infringing acceptable product, then Limelight has not shown it lost those sales but for Akamai's sales.

Even if you find that Limelight's and Akamai's products were the only ones with the advantages of the patented invention, Limelight is nonetheless required to prove to you that it, in fact, would have made Akamai's infringing sales.]

AUTHORITY for Limelight's proposal: the FCBA Instructions, B.6.2; *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

AUTHORITY for Akamai's proposal: AIPLA Model Instructions 11.2.1.4 with modifications; Dkt. 559 at 10 (quoting *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286, 1289 (Fed. Cir. 2017)); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1290 (Fed. Cir. 2017); *SynQor, Inc. v. Aresyn Techs., Inc.*, 709 F.3d 1365, 1383 (Fed. Cir. 2013); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1331-32 (Fed. Cir. 2009); *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, (Fed. Cir. 2008); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard*

*Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901-02 (Fed. Cir. 1986).

**INSTRUCTION NO. 33 – Lost Profits – Market Share**

If you find that there were other acceptable non-infringing substitute products in the market, then Limelight may be entitled to lost profits on a portion of Akamai's allegedly infringing sales [**Limelight proposes**: based on Limelight's share of the market. This market share approach allows Limelight to recover lost profits, even if there are acceptable, non-infringing substitutes, because Limelight nevertheless can prove with reasonable probability lost sales it would have made but for Akamai's infringement. The market share approach applies where the patent owner and the infringer compete in the same market, and Limelight and Akamai are competitors in the market for content delivery services.] The burden is on Limelight to prove that it is more likely than not [**Akamai proposes**: that the patented product competed in the same market as Akamai's products, and] that Limelight would have made a portion of the infringing sales equal to at least Limelight's share of that market but for Akamai's infringement.  It is not necessary for Limelight to prove that Limelight and Akamai were the only two suppliers in the market for Limelight to demonstrate entitlement to lost profits.  The burden is on Limelight, however, to show that it is more likely than not that it would have sold that portion had Akamai's product never existed.

AUTHORITY: AIPLA Model Instructions 11.2.1.5 with modifications; *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-78 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-57 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989); [for Limelight's proposal: *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1219 (Fed. Cir. 1993); Dkt. 656].

**INSTRUCTION NO. 34 – Lost Profits—Noninfringing Substitutes—Availability**

**[Limelight proposes**:[7]

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Akamai had to design or invent around the patented technology to develop an alleged substitute.**]**

AUTHORITY: the FCBA Instructions, B.6.2; *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Micro Chem.,Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003).

---

[7] **Akamai opposes** this jury instruction.

**INSTRUCTION NO. 35 – Lost Profits – Panduit Factors – Capacity**

The third factor asks whether Limelight had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Akamai's alleged infringement.  Limelight must prove that it could have supplied the additional products needed to make the sales Limelight said it lost, or that someone working with Limelight could have supplied the additional products.  Limelight also must prove that it more likely than not had the ability to market and sell these additional products.

AUTHORITY: AIPLA Model Instructions 11.2.1.6 with modifications; *Wechsler v. Macke Int'l Trade, Inc.,* 486 F.3d 1286, 1293 (Fed. Cir. 2007); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984).

**INSTRUCTION NO. 36 – Lost Profits– Panduit Factors – Amount of Profit**

Limelight may calculate the amount of its lost profits by calculating its lost sales for the patented product and subtracting from that amount any additional costs or expenses Limelight would have had to pay to make the lost sales.  This might include additional costs for making the products, or additional sales costs. The amount of lost profits cannot be speculative, but it need not be proved with unerring certainty.

AUTHORITY: AIPLA Model Instructions 11.2.1.7 with modifications; *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-83 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-80 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *King Instrument Corp. v. Otari*, 767 F.2d 853, 863-64 (Fed. Cir. 1985); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-55 (Fed. Cir. 1984); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

**INSTRUCTION NO. 37 – Lost Profits - Apportionment[8]**

[**Akamai proposes**:

Lost profit damages must be limited to the patented invention and not the entire value of a multicomponent product.  Accordingly, any lost profit damages must be apportioned to separate the value of the patented feature from the value of features other than the patented feature of a multicomponent product.  This required apportionment cannot be achieved only by finding that that patented feature is the but-for cause of the lost sale; rather, an additional step is necessary to separate the value of the patented feature from the value provided to the product by other features.]

AUTHORITY: *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 646–48, 35 S.Ct. 221, 59 L.Ed. 398 (1915); *Yale Lock Manufacturing Co. v. Sargent*, 117 U.S. 536, 553 (1886), *Dobson v. Hartford Carpet Co.*, 114 U.S. 439, 443–44, 5 S.Ct. 945, 29 L.Ed. 177 (1885); *Blake v. Robertson*, 94 U.S. 728, 733–34, 24 L.Ed. 245 (1876); *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884); *Seymour v. McCormick*, 57 U.S. (16 How.) 480, 489–90, 14 L.Ed. 1024 (1853); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 870 F.3d 1298, 1301-02 (Fed. Cir. 2017) (Dyk, J., dissenting); *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015); *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

---

[8] **Akamai submits** this proposed instruction to preserve its appellate rights but recognizes that the Court has already decided that Dr. Prowse "need not further apportion damages to specific components of Akamai's multi-component products where he has shown a lack of non-infringing alternatives by the defendant."  Dkt. 559 at 10. **Limelight objects** to the inclusion of this jury instruction.

**INSTRUCTION NO. 38 – Reasonable Royalty – Entitlement**

[**Limelight proposes**:

If you find that Limelight has established infringement of claim 1 of the 348 patent and that Akamai has not established claim 1 of 348 is invalid, Limelight is entitled to at least a reasonable royalty to compensate it for that infringement.]

[**Akamai proposes**:

If you find that Limelight has established infringement of the asserted claim of the 348 patent, Limelight is entitled to a reasonable royalty to compensate it for that infringement. However, you may award zero reasonable royalty damages if you determine that Limelight has failed to introduce substantial evidence to support a reasonable royalty damages claim.]

AUTHORITY: The FCBA Instructions, B 6.5; 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

**INSTRUCTION NO. 39 – Reasonable Royalty – Generally**

**[Limelight proposes:**

Limelight is seeking damages in this case in the form of a reasonable royalty for Limelight's 348 patents. If you find that the Defendant has infringed claim 1 of the 348 patent and that claim 1 is valid, you must consider the issue of a reasonable royalty.

The patent law provides that the amount of damages that the Defendant should pay Limelight for infringing the Limelight Patents must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of Limelight's inventions.

You must award Limelight a reasonable royalty in the amount that Limelight has proved it has been damaged.**]**

**[Akamai proposes**:

For the 348 patent, Limelight is seeking damages in this case in the form of a reasonable royalty**]**.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  This right is called a license.  A reasonable royalty is the payment for the license royalty that would have resulted from a hypothetical license negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began.  Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that that the parties did negotiate a license just before the alleged infringement began. This is why it is called a "hypothetical" license negotiation.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You should assume that both parties to the hypothetical negotiations understood that the patent was

valid and infringed and both were willing to enter into a license. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

AUTHORITY: Final Jury Instruction No. 48 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications according to the FCBA Instruction B.6.6.

**INSTRUCTION NO. 40 – Damages – Lump Sum Royalty**

One way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and estimated future infringing sales. In this case, Limelight seeks a lump-sum royalty for the 348 patent.

AUTHORITY: Model Patent Jury Instructions for the Northern District of California (2017), Instruction. B.5.7, with modifications.

**INSTRUCTION NO. 41 – Damages – Reasonable Royalty**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time just before the alleged infringement began. Some of the kinds of factors that you may consider in making your determination of a reasonable royalty are:

[**Akamai proposes**:

1.      The royalties the patentee receives for licensing the patents-in-suit;

2.      The duration of the patent and the term of the license;

3.      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

4.      The extent to which the accused infringer has made use of the invention and any evidence probative of the value of that use;

5.      The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

6.      The opinion and testimony of qualified experts; and

7.      The amount that a licensor (Limelight) and a licensee (Akamai) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.]

[**Limelight proposes**:

1.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

2.      The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

3.      The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

4.      The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

5.      The duration of the patent and the term of the license.

6.      The established profitability of the product made under the patent; its commercial success; and its current popularity.

7.      The utility and advantages of the patent property over the old modes or devices, if any that had been used for working out similar results.

8.      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

9.      The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

10.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

11.     The opinion testimony of qualified experts.

12.     The amount that a licensor (such as the patentee) and the licensee (such as the infringer) would have agreed upon (at the time infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee — who desires, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention — would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.]

No one factor is dispositive, nor does each factor need to be accorded the same weight. You can and should consider the evidence that has been presented to you in this case on each of these factors. Each factor may not apply in this case. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor established the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the alleged infringer taking place at a time prior to when the infringement began.

AUTHORITY: Final Jury Instruction No. 49 in *Samsung Electronics Co., Ltd.*, v. *NVIDIA Corp.*, No. 3:14-cv-00757, Dkt. 791 (E.D. Va. 2016) (J. Payne), with modifications to account for the facts of this case.

**INSTRUCTION NO. 42 – Damages – Apportionment of Reasonable Royalty**

[**Limelight proposes**:

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other unpatented features of the accused product, or other factors such as marketing or advertising, or Limelight's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. It is not sufficient to use a royalty base that is too high and adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented technology.

This task is not always easy and would be difficult to do with precision. A degree of uncertainty in setting that value is permissible. You should also keep in mind that the reasonable royalty reflects the value of a patent to a company, not merely the net profit upon the one component to the exclusion of all other value to the company. You should also consider whether the contribution of a patented invention increases the value of the conventional elements of a multi-component product.]

[**Akamai proposes**:

A reasonable royalty award must be based on the incremental value that the patented invention adds to the end product and no more.  Any damages awarded, therefore, must apportion the value of the patented feature from the value provided by other features of a multicomponent product.  When a patent claim is directed to an entire system, and many of the claim elements merely recite conventional features of the system, then the patent owner must apportion or separate the damages between the patented improvement and the conventional components of the

multicomponent product.  Further, damages must be based on the claimed invention's footprint in the market place.**]**

AUTHORITY for Limelight's proposal: the AIPLA Instructions, Sec. V, § 11.2.5.4; *Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201 (Fed. Cir. 2014); *Cobalt Boats, LLC v. Brunswick Corp.*, Civil Action No. 2:15-cv-21, 2017 U.S. Dist. LEXIS 200984 (E.D. Va. Dec. 4, 2017); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015); The Sedona Conference Working Group on Patent Damages and Remedies (WG9), The Sedona Conference Commentary on Patent Reasonable Royalty Determinations, at 33 (Dec. 2016).

AUTHORITY for Akamai's proposal: *Exmark Manufacturing Company, Inc. v. Briggs & Stratton Powers Products Group, LLC*, No. 2016-2197, 2018 U.S. App. LEXIS 783 (Fed. Cir. Jan. 12, 2018); *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

**INSTRUCTION NO. 43 – Deliberate – Verdict**

Upon retiring to your jury room to begin your deliberation, you must elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way, to somehow suggest to you what I think your verdict should be.  Nothing said in these instructions and nothing in any form of verdict, which has been prepared for your convenience, is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return.  What the verdict shall be is the exclusive duty and responsibility of the jury.  As I have told you many times, you are the sole judges of the facts.

A form for the verdict has been prepared for your convenience.

You will take this form to the jury room and, when you have reached unanimous agreement as to your verdicts, you will have your foreperson write your verdict, date and sign the form, and then return with your verdicts to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the bailiff. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

The Court Security Officers, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury concerning the evidence, your opinions, or the deliberations.

Bear in mind also that you are never to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, on the question of whether or not either party has sustained its burden of proof until after you have reached a unanimous verdict.

<u>AUTHORITY</u>: Judge Gibney's Stock Civil Jury Instructions regarding verdict and deliberation.